## PENNSYLVANIA-READING SEASHORE LINES, APPELLANT, v. BOARD OF PUBLIC UTILITY COMMISSIONERS, AND OTHERS, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 23, 1950—Decided February 14, 1950.

Before Judges JACOBS, DONGES and BIGELOW.

*Mr. James D. Carpenter* argued the cause for the appellant (*Messrs. Alfred W. Hesse, Jr.,* and *Carl Helmetag, Jr.,* of the Pennsylvania Bar, of counsel) (*Messrs. Carpenter, Gilmour & Dwyer,* attorneys).

*Mr. James M. Davis, Jr.,* argued the cause for respondent Brotherhood of Railroad Trainmen.

The opinion of the court was delivered by

BIGELOW, J. A. D.  The appellant Railroad Company notified the Board of Public Utility Commissioners that it was about to withdraw all passenger service on the branch line that extends from Woodbury to Penns Grove.  The Board held a hearing at which no one opposed the discontinuance of service, except a representative of the Brotherhood of Railroad Trainmen.  The Board found:

"In our opinion the evidence wholly fails to support a finding that public convenience and necessity require continuance of passenger train operation on the Penns Grove Branch between Woodbury and Penns Grove.  The continuing deficits experienced in the operation of the branch and of the entire system of the Pennsylvania-Reading Seashore Lines jeopardize essential services performed by the utility.  Continued operation of non-essential service at a substantial continuing loss, particularly where as here another means of reasonably convenient public transportation is available, is, in our opinion, not justified as in the public interest."

Despite the finding, the Board ordered appellant to continue operation of passenger service.  It was the opinion of the Board that the law, as interpreted by our former court of last resort, required the' Board to issue such an order.  *O'Connor v. Board of Public Utility Com'rs,* 129 *N. J. L.* 263 (1942), reversing 128 *N. J. L.* 35.  The appellant tries to distinguish the *O'Connor* case on sundry grounds that seem to us insubstantial.  The court in the cited case held that the Public Utility Act, *R. S.* 48:2-1 *et seq.,* gives no authority to the Board to relieve a railroad company from the obligation to provide for the transportation of passengers over every part of its line, even where passenger service serves no public convenience.  The contrary view is forcefully stated in the dissent of Justice Heher and in the opinion of Justice Bodine in the Supreme Court.  For thirty years, the Board, as well as all persons interested in such problems, had assumed that the Board was vested with power to sanction the abandonment of unneeded service.  Beginning with *In re Barnegat*

R. R., 1 P. U. C. N. J. 409 (1912) and *In re Irvington Branch of Lehigh Valley R. R.*, 3 P. U. C. N. J. 445 (1915), the published reports of the Board are studded with decisions permitting the discontinuance of passenger service. Passenger service has been abandoned on probably a majority of the short branch railroads in the State. A few branches, we are informed, were built for freight service only and have never carried passengers. *E. g.*, the West Newark branch of the Pennsylvania Railroad, the Manufacturers Railroad, which supplies factories in the easterly section of Newark, and several little railroads in Jersey City and Hoboken.

In the Board's opinion in the *O'Connor case*, 17 P. U. C. N. J. 233 (1914), after observing that with the enactment of the Public Utility Act, the State embarked upon a new policy, the Board said:

"In the light of this policy the Board's judgment is that the imposing of the duty upon the utility to provide 'adequate and proper service' and the vesting in the Board of the duty and power to enforce such service not only resulted in clothing the Board with power to require increases and improvements in service where the public interest, necessity and convenience rquires, but also the lessening, and discontinuance of service where the existing service is not reasonably required in the public interest, necessity and convenience. The rendering of service not reasonably required in the public interest, necessity and convenience requires unwarranted expenditures in maintenance and operation, increases such costs unreasonably, which costs ultimately fall upon all those served by the enterprise in increased charges, or results in failure to reduce charges where reductions might and ought otherwise to be made, or may result in rendering less than adequate and proper service to some."

See *Corporation Comm. v. Southern Pac. Co.*, 99 P. 2d 702 (*Ariz.* 1940); *Gardner v. Commerce Comm.*, 79 N. E. 2d 71 (*I..* 1948); *Chicago, M., St. P. & P. R. Co. v. Public Service Comm.*, 46 N. E. 2d 230 (*Ind.* 1943); *Benson v. Maloy*, 118 A. 852 (*Md.* 1922); *New York Cent. R. Co. v. Public Utilities Comm.*, 195 N. E. 566 (*Ohio* 1935). See also *Atlantic Coast Electric R. Co. v. Public Utility Com'rs.*, 92 N. J. L. 168 (*E. & A.* 1918); *Collingswood Sewage Co. v. Collingswood*, 91 N. J. L. 20, 92 N. J. L. 509 (1918).

The order of the Board is affirmed.