## MARTIN v. MAYOR AND ALDERMEN OF ANNAPOLIS ET AL.

[No. 33, September Term, 1965.]

580

*Decided December 6, 1965.*

582

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, OPPENHEIMER and BARNES, JJ.

*C. Edward Hartman, II,* with whom were *Fell & Hartman* on the brief, for the appellant.

*Neil Tabor* and *William L. Siskind* for Hospitality House of Annapolis, Inc., one of the appellees.

Submitted on brief by *Ridgely P. Melvin, Jr.,* for the Yacht Basin Company, another appellee.

No brief and no appearance for the other appellee.

BARNES, J., delivered the opinion of the Court.

On October 8, 1964, the appellant, William A. P. Martin (Martin), who resides at 2 St. Mary's Street, Annapolis, Maryland, and three other neighboring property owners (collectively referred to as the plaintiffs) filed a bill of complaint in the Circuit Court for Anne Arundel County against the appellees, Mayor and Aldermen of Annapolis (City of Annapolis), Hospitality House of Annapolis, Inc. (Hospitality House) and Yacht Basin Company (Yacht Basin) to obtain a declaration that a resolution of the City of Annapolis of September 14, 1964, approving the application of Hospitality House filed August 10, 1964, and approved by the City Engineer on August 14, 1964, for a parking use of a portion of property owned by Yacht Basin on Compromise Street across from St. Mary's Street in Annapolis (the subject property) and leased to Hospitality House for parking of vehicles in connection with the proposed erection by Hospitality House of a motor hotel on the subject property, was unconstitutional, illegal and void. In addition to the prayers for declaratory relief, the plaintiffs prayed that Hospitality House and Yacht Basin be enjoined from us-

ing the subject property for any purpose other than that permitted by the Annapolis Zoning regulations and from erecting a parking structure or garage or taking other action in connection with the application theretofore filed; that certain documents be forwarded to the Clerk of the Circuit Court and that the plaintiffs have other relief.

After answers were filed and testimony taken, Judge Sachse passed a decree on November 30, 1964 in which it was recited that the action of the City of Annapolis of September 14, 1964 in granting the parking permit to Hospitality House "was not arbitrary, capricious, discriminatory or illegal under the laws pertaining to the granting of such permits for the purpose of parking of vehicles prior to obtaining a permit for the erection of any structure to be used for the purpose of such parking" and further that "As no application has yet been filed by the said Defendant nor any of the Defendants in these proceedings for the erection of any structure for the purpose of operating or maintaining the parking facility, this Court has not determined whether or not the facilities described in these proceedings for the purpose of parking meets the requirements of the Code for the issuing of a building permit for the erection of the parking facilities." The bill of complaint was dismissed by the decree and the plaintiffs were required to pay the costs. It is from this final decree that the present appeal was taken.

Four questions are raised by the appeal. These are:

1. Did the City of Annapolis act arbitrarily and illegally in issuing the parking permit?

2. Did the trial court commit reversible error in denying the motion of the plaintiffs for a postponement of the trial of the case?

3. Did the trial court commit reversible error in refusing to permit the production of the entire lease between Hospitality House and Yacht Basin?

4. Did the trial court commit reversible error in refusing to permit A. L. Waldron, a witness for the plaintiffs, to testify in regard to the plans filed with the application for the parking permit?

We have concluded that all of these questions must be answered in the negative and the decree of the lower court must be affirmed.

## I.

Article IV of Chapter 17 of the Code of the City of Annapolis [1] deals with Parking Lots and Places. These are divided into three categories: 1) parking places including any building or part thereof or lot in which 10 or more vehicles are stored for a fee; 2) receiving stations where vehicles are removed after parking places are closed; and, 3) parking lots or stations incident to another business.

Hospitality House filed its application involved in the case at bar under the third category as incident to its business. There being no available form for application for a parking permit, the application was submitted by a letter from Hospitality House to the City Engineer, dated August 10, 1964. In this letter it is stated, *inter alia,* that application was made "for a parking permit to park automobiles on the premises shown on the site plan submitted with this application in triplicate, as an accessory use to the hotel or motor inn to be erected on this site in the location shown on the attached site plan." It is further stated:

> "Please take notice that the parking requested is for the use of the guests of the motor inn or hotel and is not to be a commercial parking lot for the parking of cars for the general public.
>
> "This application for a permit for parking facilities in connection with the use of the property as a hotel or motor inn is being made pursuant to and in accordance with the findings made by the Board of Zoning Appeals for the City of Annapolis on August 3, 1964 and in accordance with the provisions of the Annapolis City Code. * * *

The findings of the Board of Zoning Appeals to which reference is made in the letter-application of August 10, 1964 is as follows:

---

1. It was stipulated that the Chancellor could take judicial notice of the provisions of the Code of the City of Annapolis to the same extent as the Court takes judicial notice of the provisions of the Annotated Code of Maryland.

*"SEVENTH*: Where the provisions of Chapter 26 of the said City Code require parking facilities in connection with any contemplated use of property, a building permit should not be issued for the proposed structure or the proposed parking facilities until a parking lot permit has been obtained, in accordance with all of the provisions of the said Code." [2]

Section 26-35, paragraph (c) 3 of the City of Annapolis Code provides that "parking space * * * shall be provided adjacent to all hotel buildings * * * sufficient in area to accommodate a number of cars equal to one hundred per cent of the number of sleeping rooms * * *." Section 17-72 of the same Code under the subtitle "Parking Lots Incident to Other Business" provides in part, as follows:

"No person shall conduct, operate or maintain a parking lot or parking station for the parking of motor vehicles incident to another business without first obtaining a permit therefor from the city clerk. No permit shall be granted until there shall also be filed with the city clerk a plat or drawing of the parking lot or parking station, approved by the city engineer, showing the location, size, capacity, location and size of driveways, kind of floor or ground surface, location, size and construction of attendant's station, wall or railway or sidewalk surrounding the parking lot or parking station and all other details which the city engineer may require."

The parking use permit was accompanied by a site plan and an elevation plan showing the proposed location of the hotel and the parking facilities, and specifically, as required by Section

---

**2.** This finding was contained in an Opinion and Order entered in a zoning appeal taken by Martin and others from the granting of a building permit to Hospitality House for the construction of the motor hotel on the subject property. The Board sustained the position of the appellants in the zoning appeal that a building permit should not be issued prior to the obtention by the applicant of a parking permit. No appeal was taken from this ruling of the Zoning Board.

17-72, the location, size and capacity of the parking facilities, the location and size of driveways, the surface material to be used in constructing the parking facilities and other pertinent information.

It was clearly established by the site plan that the proposed seven-story hotel had 137 rental units and a one-story restaurant located in the northeastern portion of the subject property. The parking area for the use of the guests of the hotel is located in the northwestern and southwestern portions of the subject property adjacent to Compromise Street and this parking area contains a total of 140 parking spaces or slightly more than the 100% coverage required by the Annapolis Code.

The uncontradicted evidence submitted in the lower court by the plaintiffs established the somewhat unusual requirement and practice to file an application for the *parking use* before a *building permit* may be issued for either the construction of the parking facilities or the hotel structure.

William R. Jackson, City Engineer of Annapolis, who, as required by law, administers the Building Code of the City of Annapolis, was called as a witness by the plaintiffs and testified that the parking permit issued by him was a "use" permit only, that it did not authorize the actual construction of the parking facilities, including the elevated deck, and that in order to build the parking facilities, Hospitality House would be required to submit an application for a building permit with detailed accompanying plans and specifications.

Charles H. Steele, Fire Chief of the City of Annapolis, also testified for the plaintiffs and stated that he had reviewed and had approved the site plan submitted with the parking application and recommended its approval pursuant to Section 17-76 of the Annapolis Code.

In view of the uncontradicted evidence that the number of parking spaces equalled 100% of the number of sleeping rooms in the proposed hotel, the finding of the Zoning Board and the evidence given by the administrative officers, the finding by the trial court that the permit approved by the City of Annapolis was not arbitrary or illegal under the applicable laws of the City of Annapolis was clearly correct and it would have been premature for the trial court, in the absence of an application

by Hospitality House for a building permit to construct the facilities, to determine the issues raised by Martin as to whether or not the construction of the proposed facilities meet the requirements of the Annapolis Code. Martin may raise all of these questions as and when Hospitality House files its application for the construction of the parking facilities and may, of course, pursue the applicable administrative remedies and procedures set forth in the Annapolis Code. The trial court properly expressed no opinion and took no action in regard to the merits of these questions and neither do we. Maryland Rule 885.

The case at bar is readily distinguishable from *Lipsitz v. Parr,* 164 Md. 222, 164 Atl. 743 (1933), relied on by Martin. In *Lipsitz* our predecessors sustained the action of the Mayor and City Council of Baltimore in revoking a *building permit* issued for the construction of an ice factory in a zoning district which prohibited its use for that purpose. In the case at bar, the parking use is not prohibited but may be permitted in the discretion of the Mayor and Aldermen. There is no evidence that this discretion was abused and unless an abuse of discretion were clearly established by the evidence, we will sustain its exercise. *Engle v. City Commissioners of Cambridge,* 180 Md. 82, 86, 22 A. 2d 922, 923 (1941).

It may also be pointed out that we have held in zoning cases, involving among other things, the *use* to which the property is to be put, that neither the Zoning Board nor the Court upon appeal from the Board's decision may consider objections arising under the Building Code in regard to construction, etc. See *Norwood Heights Improvement Association v. Mayor and City Council of Baltimore,* 195 Md. 1, 6-7, 72 A. 2d 1-3 (1950).

## II.

We are of the opinion that the Chancellor did not abuse his discretion in denying Martin's motion to postpone the hearing of this case.

It is helpful to review briefly the applicable background. As we have already indicated, on August 3, 1964, the Zoning Board ruled that Hospitality House should have obtained a parking permit before a building permit could be issued to it. On August 10,

Hospitality House re-filed its application for a building permit and filed the separate application for the parking use involved in the case at bar. The parking use permit was issued on September 15 and on October 6 a new building permit was issued. The bill of complaint in the case at bar was filed on October 8 and on October 14, Martin filed new appeals to the Zoning and Building Boards from the issuance of the building permit. It was apparent that if the plaintiffs were successful in the case at bar, Hospitality House would most likely be prevented from obtaining further action in the administrative appeals, particularly in view of the prior holding of the Zoning Board that it was *first* necessary to obtain a parking permit. Quite naturally, Hospitality House requested the Chancellor to set the trial date for the case at bar at the earliest possible time and the Chancellor fixed the trial date for November 25, 1964, notice of this being sent to counsel for all parties. The plaintiffs on November 18, filed a motion to postpone the hearing. It was alleged that Hospitality House had filed its answer to the bill of complaint on November 6, the City of Annapolis had filed its answer on November 17 and Yacht Basin had not yet filed its answer. It was further alleged that the plaintiffs had had no opportunity for discovery and that the administrative appeals then pending should be "consolidated" with the case at bar.

Yacht Basin filed its answer on November 18 (the day the motion to postpone was filed) and merely adopted the answer previously filed by Hospitality House.

Also on November 18, the plaintiffs filed a substantial request for admissions of fact (it requested 17 separate admissions) under Maryland Rule 421, and Hospitality House filed its verified Answer to the Request for Admissions on the following day November 19. The administrative proceedings could not be consolidated with an equity suit. Maryland Rule 503. The plaintiffs had had the same counsel represent them in all of the previous administrative proceedings and it cannot be said that counsel was not entirely familiar with all aspects of the case. We see no prejudice to the plaintiffs in the Chancellor's refusal to postpone the trial date. A postponement might well have resulted in substantial prejudice to Hospitality House. It is well settled that to reverse on this ground, we must find

an abuse of discretion. *Hughes v. Averza,* 223 Md. 12, 19, 161 A. 2d 671, 675 (1960). We cannot say that under these circumstances, the Chancellor abused his discretion in refusing to grant a postponement of the trial date.

### III.

Nor do we think that the Chancellor committed reversible error in refusing to permit discovery of the entire lease between Hospitality House and Yacht Basin and in refusing to permit the introduction into evidence of pages 9, 10 and 11 of the lease and the site plan attached to the lease.

The plaintiffs obtained from Judge Evans an Order of Court on November 18, 1964 requiring the Hospitality House to produce for inspection, copying and photostating all leases, contracts, and agreements between Hospitality House and Yacht Basin pertaining to the proposed parking structure or the land on which the structure or deck is planned to be built or the use and control of such structure, deck or land. On November 23, Hospitality House filed its response to that order (signed by counsel but without the affidavit of Hospitality House) stating that certain provisions in a lease dated August 31, 1964 pertained to the elevated parking deck and attached pages 9, 10 and 11 of the lease (paragraph 8 of the lease) and a copy of the site plan, dated April 18, 1964, attached to the lease. There are statements in the record by counsel for Hospitality House to the Chancellor indicating that there was a conference in regard to the possible discovery of the entire lease to which Hospitality House objected because of the confidential nature of the rent and other provisions; that Judge Evans, after himself inspecting the entire lease, indicated that the only provisions in the lease relating to the parking facilities were pages 9, 10 and 11 of the lease; and, that he declined to compel Hospitality House to produce the entire lease for the inspecting and copying by counsel for the plaintiffs. There is, however, nothing else in the record indicating the action of Judge Evans in this regard. The record, however, does not show any motion for relief under Maryland Rule 422 which Rule sets out the procedure and remedies available to a party if the other party fails to comply with an order for discovery. Then too, the plain-

tiffs offered in evidence as their Exhibit 13, the Response of Hospitality House filed November 20 so that no objection to this Response was presented below and is not available to Martin on this appeal. Maryland Rule 885.

In any event, it does not appear to us that the Chancellor would have abused his discretion if he declined to compel Hospitality House to produce the entire lease (see *Sun Dial Corp. v. Fink,* 211 Md. 550, 128 A. 2d 440 (1957)) and committed no error in refusing to admit the site plan and pages 9, 10 and 11 of the lease into evidence. To justify the production of documents, the subject matter must be relevant and material to the issues in the case. *Hallman v. Gross,* 190 Md. 563, 577, 59 A. 2d 304, 310 (1948). In our opinion, the contractual arrangements between Hospitality House and Yacht Basin, being private agreements and subject to modification by agreement between the parties at any time, would have no controlling effect or materiality to the question of the parking use of the subject property on the application to the City of Annapolis for the parking use. The situation is analogous to private agreements and restrictive covenants and their relationship to the question of validity of zoning ordinances. These private agreements have no effect upon the validity of zoning ordinances. *Perry v. County Board of Appeals for Montgomery County,* 211 Md. 294, 127 A. 2d 507 (1956); *Chayt v. Maryland Jockey Club,* 179 Md. 390, 18 A. 2d 856 (1941). See *Wheeler v. Gregg,* 90 Cal. App. 2d 348, 203 P. 2d 37 (Dist. Ct. App. 1949); *Willott v. Village of Beachwood,* 175 Ohio St. 557, 197 N.E. 2d 201 (1964). See also 101 C.J.S. *Zoning* §39, pages 748-749; 3 RATHKOPF, THE LAW OF PLANNING AND ZONING ch. 74, §1, pages 74-1 to 74-6 (3rd ed. 1964).

## IV.

In our opinion, the Chancellor did not commit reversible error in refusing to permit A. L. Waldron, a witness called by the plaintiffs, to interpret the drawings in evidence as to whether or not as so interpreted they violated various sections of the Code of the City of Annapolis.

Mr. Waldron is a graduate of the United States Naval Academy and is a mechanical engineer whose engineering ex-

perience had been as a naval officer except for the year and one-half he had been employed as operations manager of Hydra-search, Inc. He is not a registered professional engineer and had never practiced as such. His only experience in reading plans was with respect to the building of ships in shipyards. Counsel for the plaintiffs stated "I am saying that I am not putting him on as an expert witness." It is clear that Mr. Waldron had no direct knowledge of the facts in the case.

As we have already indicated, however, these issues were not properly before the Chancellor so that no prejudice resulted to Martin from the Chancellor's exclusion of this evidence, even if it be assumed, *arguendo,* to be admissible.

*Decree of November 30, 1964 affirmed, the costs to be paid by the appellant.*