## SCHILLER *v.* LEFKOWITZ

[No. 129, September Term, 1965.]

*Decided May 11, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY, OPPENHEIMER and McWILLIAMS, JJ., and KEATING, J., Associate Judge of the Second Judicial Circuit, specially assigned.

*John T. Bell,* with whom were *Bell & Bell* and *Charles W. Bell* on the brief, for appellant.

*John M. McInerney,* with whom were *McInerney, Latham & Layne* on the brief, for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

The appellant's appeal from an adverse judgment in a civil jury case was pending when *Schowgurow v. State,* 240 Md. 121, 213 A. 2d 475 (1965) was decided. The jury which decided against the appellant, Schiller, in the Circuit Court for Montgomery County was composed of persons who were required, as a condition of their service, to swear to a belief in God. The appellant contends that under *Schowgurow* and subsequent decisions he was deprived of rights guaranteed to him by the Fourteenth Amendment to the federal Constitution and the Maryland Declaration of Rights, and is entitled to a new trial.

The appellant's suit was for personal injuries sustained as a result of the appellee's alleged negligence in the operation of his automobile. The appellant asked for a jury trial. His suit was filed on October 28, 1963 and came to trial on November 2, 1964. Immediately before the trial, at a bench conference, on the suggestion of the lower court and with the consent of the then attorneys for both parties, it was decided that the case be tried first as to liability and then as to damages. The jury, after hearing evidence only on the issue of liability, returned a verdict in favor of the appellee. The appellant's motion for a new trial was denied and judgment was entered for the appellee. The appellant's original counsel withdrew his appearance. The appeal was entered on February 24, 1965.

While the appeal was pending, *Schowgurow* was decided, on October 11, 1965. Thereafter, on motion duly made, this Court

permitted the appellant to amend his original brief and to raise the additional questions as to the effect of *Schowgurow* and our subsequent decisions on his trial. In his amended brief, the appellant states that in Montgomery County (as is generally true in Maryland) jury panels for criminal and civil cases are selected from the same jury list, and that no distinction is made in the method of selection of jurors for civil and criminal cases. These facts are agreed to by the appellee. Neither in his amended brief nor in oral argument did the appellant claim actual prejudice; he contends that, under our decisions, prejudice is presumed. He does not contend that objection was made before or during the trial to the method under which the jury was selected, but, under *Hays and Wainwright v. State,* 240 Md. 482, 214 A. 2d 573 (1965), failure to object, before *Schowgurow,* does not constitute a bar to the raising of the questions here involved.

The appellant's original ground for his appeal was that the trial court's separation of the issue of liability from the issue of damage in a civil jury trial was not justified by the Maryland Rules, and, if it was, the court's action contravenes the Maryland Constitution. In his amended brief, the appellant contends that he was deprived of rights guaranteed to him by the federal Constitution and the Maryland Declaration of Rights by reason of the illegal exclusion from the jury of persons because of the nature of their beliefs about religion. We shall first consider the questions raised in the appellant's amended brief.

I

In *Schowgurow,* the Court held that because of the decision of the Supreme Court of the United States in *Torcaso v. Watkins,* 367 U. S. 488 (1961), reversing the decision of this Court, the provision of Article 36 of the Maryland Declaration of Rights requiring demonstration of belief in God as a qualification for service as a grand or petit juror was in violation of the Fourteenth Amendment to the United States Constitution. We held, further, that the decision was not to apply retroactively except for convictions which had not become final before rendition of our opinion. In *State v. Madison,* 240 Md. 265, 213 A. 2d 880 (1965), the Court held that the indictment pending

against the defendant when *Schowgurow* was decided, was voidable even though the defendant was a member of a faith which believed in the existence of a Supreme Being. *Smith v. State,* 240 Md. 464, 214 A. 2d 563 (1965), held that criminal proceedings pending at the time *Schowgurow* was decided, in which the grand jury had been improperly selected, were voidable but not void, and that the defect could be knowingly and understandingly waived. In *Hays and Wainwright v. State, supra,* it was held that, in a criminal proceeding pending at the time of *Schowgurow,* when the conviction had not become final, the defendants were not barred, on appeal, from invoking the principle set forth by the change in law, and that, because at the time the grand jury had been selected, the law then in effect had been a part of the Maryland Constitution for over a century, the failure of the defendants to object in the lower court was not a waiver of an existing right.

There can be no question but that the method of jury selection which *Schowgurow* held was invalid in criminal cases because of the Supreme Court's decision in *Torcaso* is equally invalid in civil cases. The invalidity stems from the First Amendment to the federal Constitution, made applicable to the states through the Fourteenth, and goes to the exclusion of prospective jurors because of the nature of their beliefs about religion in any trial, criminal or civil. The requirement is invalid as to the selection of the juries and the invalidity does not depend upon the nature of the litigation in which the juries serve. After *Schowgurow,* any jury chosen under the exclusionary procedure therein held improper would be illegally constituted and could be successfully challenged in any case, criminal or civil. The question before us is whether the *Schowgurow* principle is to be held retroactive as to a pending appeal of a civil case when the method of the jury's selection was not challenged and when no actual prejudice is alleged.

## II

In *Schowgurow,* the Court considered the legal principles applicable to the prospective or retroactive effect to be given to a new ruling, reversing, because of a Supreme Court decision, what had been regarded as settled law. The opinion re-

ferred to *Linkletter v. Walker,* 381 U. S. 618 (1965), *Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U. S. 358 (1932) and other cases, and it was held that the proper administration of justice required that the legal principle enunciated in *Schowgurow* shall not apply retroactively, "except for convictions which have not become final before rendition of this opinion." See also *Hays and Wainwright v. State, supra,* at 486-88.

A decision changing pre-existing law can be made wholly prospective without application even to the case in which the change is announced. *Sunburst, supra,* at 364, and see *Linkletter,* 381 U. S. at 622 footnote 3 and 627-29.[1] In *Schowgurow,* this Court did not adopt the technique of purely prospective overruling. That technique, as has been pointed out in the authorities cited in footnote 1, makes an opinion only a prophecy instead of an adjudication, chills legitimate attacks upon existing law believed erroneous, and is unfair to the litigant whose initiative has brought about the change. However, the decision was made only prospective except as to the case itself and as to other convictions which had not then become final.

The exception set forth, in terms, applies only to pending criminal cases. We shall nevertheless consider whether, in the interest of the proper administration of justice or in general fairness, the exception should be extended to pending civil cases, and whether, in any event, the exception must be so extended because pending criminal and civil cases must be treated alike.

---

1. See also Comment Note—Retroactive or Merely Prospective Operation of New Rule Adopted by Court in Overruling Precedent —Federal Cases, 14 L. ed. 2d 992, 1001-02 (1966); Annot. Right of Court in Overruling Earlier Precedent to Apply New Rule Prospectively and Adhere to Old One as Regards Past Transaction, 85 A.L.R. 262 (1933); Levy, Realist Jurisprudence and Prospective Overruling, 109 U. of Pa. L. Rev. 1 (1960); Mishkin, The Supreme Court 1964 Term—Foreword: The High Court, The Great Writ, and the Due Process of Time and Law, 79 Harv. L. Rev. 56 (1965); Note, Prospective Operation of Decisions Holding Statutes Unconstitutional or Overruling Prior Decision, 60 Harv. L. Rev. 437, 447-48 (1947); Note, Prospective Overruling and Retroactive Application in the Federal Courts, 71 Yale L.J. 907, 942-44 (1962).

### III

It was pointed out in *Schowgurow,* 240 Md. at 134, that the decision as to the method of selection of the grand and petit juries "does not go to the fairness of the conduct of the trial— 'the very integrity of the fact-finding process.' *Linkletter* at 381 U. S. 639." That is equally true as to the pending case and as to all other civil jury cases whether finally adjudicated or pending at the time of *Schowgurow.* The defect goes to the method by which the jury was selected, not to the qualifications and competency of the jurors who served. *Smith v. State,* 240 Md. at 468.

From the point of view of the administration of justice, we see no reason why *Schowgurow* should be made retroactive in any respect as to civil cases. As *Linkletter* recognizes, and as was held in *Sunburst,* a civil case, retroactive operation of an overruling decision is neither required nor prohibited by any constitutional principle. Whether and to what extent a new rule adopted in an overruling decision will be given retroactive effect is a matter of judicial policy, to be determined in each case "by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter,* 381 U. S. at 629. As to the prior history of the exclusionary procedure held invalid in *Schowgurow* because of the Supreme Court's decision in *Torcaso,* the procedure embodied in our Declaration of Rights was in effect for more than a century and had been upheld by this Court. The purpose of its overruling, under the Supreme Court's decision, was to effectuate the intent of the First Amendment, made applicable to the states through the Fourteenth; that purpose is achieved through the mandatory requirement that the illegal exclusion in the selection of juries be abandoned in all trials, civil or criminal, after *Schowgurow.* Retroactive operation of the rule cannot further or retard its future application.

In *Molitor v. Kaneland Community Unit District No. 302,* 18 Ill. 2d 11, 28-29, 163 N. E. 2d 89 (1959), the plaintiff was injured in a school bus accident, and sued the school district for alleged negligence. The trial court gave the District a summary judgment on the ground of sovereign immunity, which

had been the Illinois law for a long period. The intermediate court affirmed, but the Illinois Supreme Court overruled its prior decisions as to sovereign immunity and reversed. In so doing, the court denied retroactive application of its decision except as to the plaintiff in the case before it.[2] The court said that retrospective application of the decision might result in great hardship to school districts which had relied on prior decisions upholding the doctrine of tort immunity of such districts. Here, retroactive application would result in hardship to many parties who had received a verdict from competent and qualified juries and who would be forced to retry the cases (if their witnesses were still available) because of what was subsequently held to be a procedural defect in the method of jury selection. The Illinois court also said that, "if we were to merely announce the new rule without applying it here, such announcement would amount to mere *dictum.* Second, and more important, to refuse to apply the new rule here would deprive appellant of any benefit from his effort and expense in challenging the old rule which we now declare erroneous. Thus there would be no incentive to appeal the upholding of precedent since appellant could not in any event benefit from a reversal invalidating it." Here, *Schowgurow* was not a dictum but a decision as to that case and the original challenge of the old rule was made by Schowgurow, not Schiller.

In *Chykirda v. Yanush,* 131 Conn. 565, 568-69, 41 A. 2d 449 (1945), the Connecticut Supreme Court of Errors held that evidence must be offered as a basis for an award of punitive damages. In so holding, the court reversed its prior decisions on the question. However, in the case before it, the court refused to disturb the judgment, although the trial court, in accordance with previous decisions, had charged the jury that they were authorized to award punitive damages even in the absence of evidence to support the award. The appellate court said the case "affords us an opportunity definitely to abolish the practice of claiming such damages in the absence of evidence as to them."

---

2. Molitor v. Kaneland Community Unit District No. 302, 24 Ill.2d 467, 182 N.E.2d 145 (1962) applied Molitor to other claims arising out of the same bus accident, on the ground that the earlier appeal was treated by the parties as a test case.

The holding, in view of the decision, was purely prospective.[3]

As this Court pointed out in *Madison,* 240 Md. at 271, *Thiel v. Southern Pacific Co.,* 328 U. S. 217 (1946), like *Schowgurow* and *Madison,* involved the effect of an improper exclusion from the jury list. *Thiel* was a civil case. In that case, the Court reversed a verdict for the respondent on the ground that the jury commissioners had improperly excluded from the jury lists all persons who worked for a daily wage. In *Francis v. Southern Pacific Co.,* 333 U. S. 445, 450-51 (1948), another civil case pending when *Thiel* was decided, the petitioners contended that the jury panel in the case was selected contrary to *Thiel. Thiel* was decided a few weeks after the verdict in *Francis,* and the objection was made for the first time in the motion for a new trial. The Court held the objection came too late. In *Thiel,* the Court acted in the exercise of its power over the administration of justice in the federal courts, and the question of retroactivity as to pending cases was not discussed in *Francis,* but the refusal to make *Thiel* applicable to pending cases is nevertheless pertinent. In this case, as in *Francis,* no question of the fairness of the trial is involved.

We find no constitutional or other reason to extend the *Schowgurow* exception as to non-retroactivity to pending civil cases, unless the fact that *Schowgurow* made the exception as to pending criminal cases of itself entitles the appellant and other persons in like circumstances to inclusion within it.

## IV

A change in law will generally be given effect while a case is on direct review whether the litigation is criminal or civil.

---

3. In Mickel v. New England Coal & Coke Co., 132 Conn. 671, 677, 47 A. 2d 187 (1946), the court applied a change made by it in a rule previously in effect for measuring damages in an action based on negligence to a case pending when the change was made. The opinion stated that the change involved went "beyond a mere procedural matter such as that before us in Chykirda v. Yanush."

Without commenting on the distinction made by the Connecticut court in the application of a change in pre-existing law as between "procedural" and substantive matters, the change in pre-existing law set forth in Schowgurow may be regarded as procedural in nature. See United States v. Gale, 109 U. S. 65, 70-71 (1883) discussed in Smith v. State, 240 Md. 464, 469-70, 214 A. 2d 563 (1965).

See *Linkletter,* 381 U. S. at 627 and cases therein cited. That principle does not mean, however, that in deciding whether a change in law is to be given retroactive effect as to cases other than the litigation in which the change is announced, the Court is not free to consider any substantial difference between the case before it and other pending cases. We must "weigh the merits and demerits in each case." *Linkletter* at 629. Specifically, we must determine, when the decision in the particular case rests in part on a presumption of prejudice to the defendant in a criminal case by reason of an improper method of choosing the grand and petit juries, whether it necessarily follows that there is the same presumption in a pending civil case.

In deciding whether a change of law is to be made retroactive in criminal cases, the Supreme Court has analyzed the nature of the change on a case to case basis. In considering retroactivity in *Schowgurow,* we referred to the discussion in *Linkletter* of the differences between the right of an indigent defendant, on appeal, to a free transcript of his trial under *Griffin v. Illinois,* 351 U. S. 12 (1956), and to state-provided counsel at the time of his trial under *Gideon v. Wainwright,* 372 U. S. 335 (1963), and the right of the defendant, under *Mapp v. Ohio,* 367 U. S. 643 (1961), in state criminal trials, to have evidence excluded which was seized in violation of the search and seizure provisions of the Fourth Amendment. *Linkletter* footnote 13, 381 U. S. at 628; *Schowgurow,* 240 Md. at 132-33. In *Tehan v. Shott,* 382 U. S. 406, 416-18 (1966), the Supreme Court held that its decision in *Griffin v. California,* 380 U. S. 609 (1965), that it was unconstitutional for a prosecutor or trial judge to make adverse comment upon a defendant's failure to testify in a state criminal trial[4] was not to be applied retroactively in cases in which the conviction had become final. In his opinion for the Court in *Tehan,* Mr. Justice Stewart said:

---

4. In Maryland, such comment was forbidden long prior to Griffin v. California. Maryland Declaration of Rights, Art. 22, Code (1965 Repl. Vol.) Art. 35, Sec. 4, see Barber v. State, 191 Md. 555, 566, 62 A. 2d 616 (1949).

"As to *Mapp,* therefore, we deal here with a doctrine which rests on considerations of quite a different order from those underlying other recent constitutional decisions which have been applied retroactively. The basic purpose of a trial is the determination of truth, and it is self-evident that to deny a lawyer's help through the technical intricacies of a criminal trial or to deny a full opportunity to appeal a conviction because the accused is poor is to impede that purpose and to infect a criminal proceeding with the clear danger of convicting the innocent * * * The same can surely be said of the wrongful use of a coerced confession * * * By contrast, the Fifth Amendment's privilege against self-incrimination is not an adjunct to the ascertainment of truth * * *

"There can be no doubt of the States' reliance upon the *Twining* rule for more than half a century, nor can it be doubted that they relied upon that constitutional doctrine in the utmost good faith * * *

"The last important factor considered by the Court in *Linkletter* was 'the effect on the administration of justice of a retrospective application of *Mapp.*' * * * A retrospective application of *Griffin v. California* would create stresses upon the administration of justice more concentrated but fully as great as would have been created by a retrospective application of *Mapp.*" [citations omitted].

The considerations of justice and public policy upon which the Supreme Court has relied in determining whether its various decisions making new law as to the rights of defendants in criminal cases are to be applied retroactively are, in our opinion, also applicable in determining whether the limited retroactivity of a decision which overturns previous law should be applied to civil as well as to criminal cases. The reasoning which makes the announcement of a change in law retroactive in some criminal cases and not retroactive in others, dependent upon the interests of justice in the particular kinds of cases involved, seems to us pertinent in deciding whether, in the interests of justice, a distinction is to be made in making a change of law

applicable to various kinds of cases pending at the time of the decision. Here, the distinction involved is the fundamental one between civil and criminal cases. The question is whether the presumption of prejudice which we held applicable in pending criminal cases is also to be held applicable in pending civil litigation.

Litigants in civil matters are as much entitled to due process of law and all it implies as are defendants in criminal prosecutions. The constitutional guarantees apply alike to rights of life, liberty and property. But what the concepts of fairness embodied in due process of law entail necessarily varies with the nature of the litigation. The rights of civil adversaries do not encompass all the protections guaranteed to defendants in criminal cases. In civil cases, the adversaries are generally private parties who stand in *pari passu;* in criminal matters, the power of the state, with all the resources of government, are pitted against the individual whose liberty or even life is at stake.

Accordingly, our law has evolved certain protections to defendants in criminal prosecutions which are not applicable to parties in civil litigation. In civil cases, the party who has the burden of proof on an issue must only persuade the trier of the facts that the preponderance of the evidence is on his side; in a criminal case, the State must prove that the defendant is guilty beyond a reasonable doubt. In a civil case, either party has the right to call his opponent to the stand; in a criminal prosecution, the State cannot force the defendant to testify against himself or comment on his failure to testify. The rights of indigent defendants in criminal prosecutions to court appointed counsel and to a free transcript of the proceedings on appeal are not accorded to indigent civil litigants. It is immaterial here whether these specific protections as well as others which apply only to criminal prosecutions are embedded in specific constitutional guarantees, or have become part of what today we consider due process of law by selective incorporation or have been made applicable to or absorbed into due process by development of the community's sense of justice. They reflect the practical endeavor of our processes of justice to give concrete meaning to the presumption of innocence in which every

defendant in a criminal case stands armored. That presumption has no place in civil litigation, not because civil litigation is less important in our legal system or because the parties to it are not entitled to the fairness of procedure applicable to it, but simply because the presumption does not apply.[5]

---

**5.** "* * * The second distinction is between the right to liberty of person and other constitutional rights. Compare Phillips v. Commissioner, 283 U. S. 589, 596-597. A citizen who claims that his liberty is being infringed is entitled, upon habeas corpus, to the opportunity of a judicial determination of the facts. And, so highly is this liberty prized, that the opportunity must be accorded to any resident of the United States who claims to be a citizen. Compare Ng Fung Ho v. White, 259 U. S. 276, 282-285, with United States v. Ju Toy, 198 U. S. 253, and Tang Tun v. Edsell, 223 U. S. 673, 675. But a multitude of decisions tells us that when dealing with property a much more liberal rule applies. They show that due process of law does not always entitle an owner to have the correctness of findings of fact reviewed by a court; and that in deciding whether such review is required, 'respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or none of these: and if found suitable or admissible in the special case, it will be adjudged to be "due process of law."' Mr. Justice Bradley, in Davidson v. New Orleans, 96 U. S. 97, 107." St. Joseph Stock Yards v. United States, 298 U. S. 38, 77-78 (1936)—Concurring opinion of Brandeis, J.

"* * * [T]he quantum of proof necessary in most civil matters, usually involving the creation of only a monetary liability, is less than that required for the imposition of the sanctions of the criminal law. The difference is perhaps most readily explicable in terms of the impact of the respective findings. The personal impact upon the life of the individual from the imposition of criminal sanctions is of far more serious proportions than from the imposition of a civil liability. The impact upon society is likewise of a different order. The greater consequences for the security of society portended by the administration of the criminal law permit a lesser margin for error. The breakdown of a free society is more likely to arise out of the unpredictable enforcement of criminal penalties than out of a like unpredictability in determining the incidence of civil liability." Kadish, Methodology and Criteria in Due Process Adjudication—A Survey and Criticism, 66 Yale L.J. 319, 350 (1957).

"Of all cases presenting the question of retroactivity, those involving criminal law most clearly show when considerations of policy transcend the limitations of either the void ab initio doctrine

474

In *Schowgurow,* the State contended that even though, as was held, an unconstitutional requirement had been imposed in selection of the juries, the defendant had shown no prejudice and therefore, as to him, no denial of a constitutional right. This Court held, citing decisions of the Supreme Court, that it is the danger of abuse resulting from the method of selection which renders it unconstitutional, that the burden was upon the State to show that there was no exclusion or discrimination, and that the burden had not been met. It was the possibility of prejudice to a defendant in a criminal case, presumed to be innocent, which was determinative. In *Madison,* the Court referred to and distinguished decisions of the Supreme Court holding that the defendant must be a member of the excluded class in order to have standing to attack the method of jury selection, on the ground that in those cases the exclusion was not required by the basic law.[6] The opinion restated the reason for the holding that prejudice was presumed, as follows:

"Where, as here, the unconstitutional discrimination is an integral part of the governing law, a defendant in a criminal case whose conviction has not become final is not required to show that he is prejudiced by the application of the law. Every person accused of crime has the right to be tried under what has been determined to be the law of the land. In *Schowgurow,* the State, as here, contended there had been no showing of actual prejudice. We held that where the system of jury selection on its face provides for illegal discrimination and exclusion, an actual showing of prejudice is unnecessary. It is the danger of abuse resulting from the method of selection which renders it unconstitutional. We pointed out that the exclusion of non-believers was not only authorized but demanded by the Maryland Constitution and that the

or the principle of reliance. Because personal liberty is such an important interest, the granting or denial of retroactive operation is made to effect the protection of the person convicted of or charged with a crime." Note, 60 Harv. L. Rev. 437, 446.

6. See, however, Chief Judge Thomsen's discussion of this question in Smith v. Brough, 248 F. Supp. 435, 441-42 (D. Md. 1965).

resulting danger of abuse, under the decisions of the Supreme Court, obviates any need to show individual prejudice." *Madison,* 240 Md. at 268-69.

The "danger of abuse" referred to in *Schowgurow* and *Madison* is a concept which grows out of the presumption of innocence to which every defendant is entitled in a criminal case. In criminal cases, the protection of society is weighed against the protection of the rights of the individual. In balancing the scales, because of the presumption of innocence, the law weights the scales in the defendant's favor in the endeavor to avoid the conviction of the innocent. In that endeavor, it is necessary to guard against the danger of abuse, even when no actual abuse has been shown. The reason is the same as that which, in a criminal case, requires persuasion of the trier of the facts of the defendant's guilt beyond a reasonable doubt. If, because of the danger of abuse, the State is put to the inconvenience of a retrial, that is part of the price we pay for ordered liberty. The sovereign's interest in a criminal case "is not that it shall win a case, but that justice shall be done." *Berger v. United States,* 295 U. S. 78, 88 (1935). It was the State, in *Schowgurow* and *Madison,* through its officials, which had enforced the improper requirement in the selection of the juries, and while the State was acting in accord with the Maryland Constitution and the prior decisions of this Court, it is fitting that the chance of danger of abuse should tip the scales against the State and in favor of the man it was prosecuting.

These considerations are not pertinent in a civil case. The State is not a party. The litigants stand on an equal footing. The defect in the method of the selection of the jury did not go to the fairness of the trial. Moreover, in a civil case, there are to be considered not only the rights of one individual party, but the rights of both parties. A civil litigant who received a verdict from a jury would be put to additional expense and would again have to face the uncertainties of litigation if a new trial is awarded because of a defect in the method of the selection of the jury, even though the jurors who heard the case were competent and qualified and though the trial itself was fair. In a criminal prosecution, under our legal system, courts look primarily to whether the rights of the defendant have been

properly safeguarded, but in a civil case, the rights of both of the private adversaries must be considered. To award a new trial in this case, because of the possibility of unproved prejudice to the appellant, would be unjust to the appellee. In a situation such as is here presented, due process does not demand that a civil case be treated like a criminal one. On the contrary, as the considerations of fairness applicable to a criminal prosecution led us to find there was a presumption of prejudice, so the concepts of fairness applicable to civil cases constrain us to find that, here, prejudice must be proved.

We find no violation of any constitutional right of the appellant under the Maryland Declaration of Rights or the federal Constitution in denying him retroactive application of *Schowgurow* and hold that the appellant is not entitled to a new trial because of the improper method of selection of the jury, whether under general legal principles in the administration of justice, or by reason of the exception made to non-retroactivity in *Schowgurow* as to pending criminal cases.

V

The original ground for the appellant's appeal goes to the separate trials of the issues of liability and damages ordered by the trial court under Maryland Rule 501(a). No objection was made to this order in the court below; indeed, both the attorneys then acting agreed to the procedure. We have consistently held that we will not consider or pass upon a question which was not raised in or passed upon by the court below. Maryland Rule 885; *Martin v. Mayor and Aldermen of Annapolis,* 240 Md. 579, 590, 214 A. 2d 800 (1965). The question of the constitutionality of Rule 501(a) was not raised below. Even in criminal cases, a constitutional question can be waived. *Smith v. State,* 240 Md. at 480 and cases therein cited.

Nothing herein said is to be construed as implying that separate trials of the issues of liability and damages could not have been ordered under the Maryland Rule without the consent of the parties or their counsel, or that the rule may be invalid. These questions are not before us.

*Judgment affirmed; costs to be paid by appellant.*