MARY JEAN SCHULTZ, A MINOR, BY ARNOLD J. SCHULTZ, FATHER AND NATURAL GUARDIAN, AND OTHERS v. CHICAGO AND NORTHWESTERN RAILWAY COMPANY AND ANOTHER.

175 N. W. (2d) 177.

February 27, 1970—No. 41804.

232

*Robert N. Stone, McGuire & Mellby* and *Theodore Mellby,* for appellants.

*Blethen, Ogle, Gage & Krause* and *Arthur H. Ogle,* for respondent.

THEODORE B. KNUDSON, JUSTICE.*

Appeal by plaintiffs from a judgment entered pursuant to an order granting a motion of defendant Edith E. Schultz for summary judgment in her favor both as to the claims of plaintiffs and as to the cross-claim of defendant Chicago and Northwestern Railway Company. The trial court held that the child-parent immunity rule in negligence cases applied to these actions. The sole issue involved is whether an exception should be made to the rule, stated in Silesky v. Kelman, 281 Minn. 431, 161 N. W. (2d) 631, that child-parent tort immunity is abrogated only as to causes of action arising on or after September 27, 1968, and as to that case.

The causes of action in this case arose on September 25, 1966, when the car driven by defendant Edith E. Schultz was struck by a Chicago and Northwestern train. Riding in the car with

---

* Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

Mrs. Schultz were her seven children, two of whom were killed in the collision. The other five were injured, and, with their father as representative, brought these actions on July 3, 1968, against their mother to recover for their injuries. The district court granted summary judgment for defendant on November 18, 1968, relying on the Silesky case. The plaintiffs filed notice of appeal to this court on January 15, 1969, two days after judgment was entered for defendant.

In the past few years this court has established a pattern of disposition of cases in which traditional tort immunities have been challenged. With few limitations, this court has rejected the substantive immunities and has done so prospectively, except for the case in which the rule was announced. This was the approach used in Balts v. Balts, 273 Minn. 419, 142 N. W. (2d) 66 (tort action by parent against child); Silesky v. Kelman, *supra* (tort action by child against parent); and Beaudette v. Frana, 285 Minn. 366, 173 N. W. (2d) 416 (interspousal tort suit).

In Eicher v. Jones, 285 Minn. 409, 173 N. W. (2d) 427, this court allowed a tort action in behalf of a minor child against the parent even though the cause of action arose before the date Silesky was handed down. However, in doing so, it was emphasized that the facts in Eicher were unique and that the decisions abrogating intrafamily tort immunities were not to be applied retroactively. Plaintiffs have made substantially the same arguments here as were advanced in Eicher. But plaintiffs also argue that to draw a line at the filing date of the Silesky opinion is to create a favored class in violation of the equal protection clause of the Fourteenth Amendment to the Federal Constitution and Minn. Const. art. 1, § 2, and art. 4, § 33.

■ The present case is distinguishable from Eicher. Although the causes of action in Silesky, Eicher, and this case all accrued in 1966, plaintiffs in the present actions did not initiate them until more than two years after the plaintiffs in Eicher had filed

suit and more than one year after the plaintiffs in Silesky had started suit.[1] Of greater significance, the plaintiffs in the present actions filed their notice of appeal 4 1/2 months after the Silesky opinion was handed down. The history of the Eicher proceedings, on the other hand, shows that there was a close tie between the appellate preparation of both Eicher and Silesky. The plaintiffs in Eicher appealed only 4 months after the plaintiffs in Silesky, although the briefs were not filed in Eicher until February 5, 1969, well over a year after the appeal was filed. On June 21, 1968, the defendant's attorneys sent a letter to the clerk of the supreme court requesting an extension of time for filing her brief due to the pendency of Silesky and pointing out that the parties involved had agreed Silesky would be controlling. However, on November 20, 1968, after the Silesky opinion had been filed, defendant's counsel addressed another letter to the clerk of the supreme court requesting another extension of time for submitting briefs and stating that Silesky "has not had the effect we planned" and that they intended to proceed with the appeal. This court agreed that it would be unjust to refuse application of the Silesky holding in the unique factual situation the Eicher case presented, concluding (285 Minn. 412, 173 N. W. [2d] 429):

"If the parties had not agreed to continue the appeal and to await the decision in Silesky, then these two cases most likely would have been consolidated and argued together before this court. The retroactivity portion of the Silesky decision would then have been equally applicable to the issues present in the instant case."

---

[1] These are the important dates in the three cases:

|  | Silesky | Eicher | Schultz |
|---|---|---|---|
| Accident | Oct. 16, 1966 | Feb. 19, 1966 | Sept. 25, 1966 |
| Suit Filed | Feb. 20, 1967 | Apr. 26, 1966 | July 3, 1968 |
| Notice of appeal | June 7, 1967 | Nov. 30, 1967 | Jan. 15, 1969 |
| Decision | Sept. 27, 1968 | Jan. 2, 1970 |  |

In the Eicher decision this court cited an opinion of the Illinois Supreme Court which plaintiffs here urge as authority for their position. A brief review of Molitor v. Kaneland Community Unit Dist. No. 302, 24 Ill. (2d) 467, 182 N. E. (2d) 145 (Molitor 2), will further illustrate the dissimilarity between Eicher and the present appeal. In Molitor v. Kaneland Community Unit Dist. No. 302, 18 Ill. (2d) 11, 163 N. E. (2d) 89, 86 A. L. R. (2d) 469 (Molitor 1), the Illinois Supreme Court abrogated the tort immunity of school districts as of December 16, 1959. The accident which was the basis for Molitor 2 happened March 10, 1958, and was in fact the same accident which was the basis for Molitor 1. The trial judge in Molitor 1 had suggested that just one of the several plaintiffs take the case to the supreme court to expedite the process and that the others be bound by the result. The cost of the appeal was borne equally by all plaintiffs. The Illinois court said (24 Ill. [2d] 470, 182 N. E. [2d] 146):

"* * * [T]he conduct of all parties and the trial court reveal that it was commonly understood and accepted that this court's ruling on the dismissal of Thomas Molitor's claim would be the basis for determining the other claims arising out of the same bus accident and then pending against defendant. * * * Because it now appears the Thomas Molitor appeal was treated by the parties as a test case for determining what ruling should ultimately be made, we hold that the counts in question should not have been dismissed.

"It should be evident that this holding in no way modifies or affects our holding in the Molitor case or the cut-off date relative to governmental tort immunity as previously established in that case * * *."

Unlike the defendant in Molitor 2 and to a somewhat lesser extent unlike the defendant in Eicher, the plaintiffs in this appeal did not actively or passively participate in the designation of another action as a case which would test the continued validity of an established doctrine. The present posture of

Schultz is not at all like Molitor 2. Moreover, in Eicher and Molitor 2 the plaintiffs' reasonable reliance on the initial case was so weighty and the procedural chronology so similar that injustice would have been done were an exception not made to the application of the newly established rules. What equity there is in the appeal of plaintiffs, who were explicitly informed (through the Silesky opinion) of the probable decision which this court would render in their appeal, does not warrant the making of another exception to the purposeful consistency applied by this court in disposition of cases which abrogate traditional tort immunities.

■ Plaintiffs claim that to draw a line at the date of the Silesky decision and to grant the plaintiffs in Silesky the benefit of the change in the rule is to create a favored class in violation of the equal protection clause of the Fourteenth Amendment to the Federal Constitution and Minn. Const. art. 1, § 2, and art. 4, § 33. The same argument (at least as to the Federal Constitution) was used in Molitor 1 and was met by the Illinois Supreme Court in the following language:

"It is within our inherent power as the highest court of this State to give a decision prospective or retrospective application without offending constitutional principles. Great Northern Railway Co. v. Sunburst Oil & Refining Co., 287 U. S. 358, [53 S. Ct. 145] 77 L. ed. 360.

"Although ordinarily the cases which have invoked the doctrine of prospective operation have involved contract or property rights or criminal responsibility, the basis of the doctrine is reliance upon an overruled precedent. Despite the fact that the instant case is one sounding in tort, it appears that the 'reliance test' has been met here. * * *" 18 Ill. (2d) 28, 163 N. E. (2d) 97.

The decision in G. N. Ry. Co. v. Sunburst Oil & Refining Co. 287 U. S. 358, 53 S. Ct. 145, 77 L. ed. 360, cited in Molitor 1, was written by Mr. Justice Cardozo in reviewing a decision of the

Montana Supreme Court which concluded that a rule of law the state had adopted was erroneous but that the new rule governed only prospective transactions. Justice Cardozo said:

"We think the federal constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. * * * The choice for any state may be determined by the juristic philosophy of the judges of her courts, their conceptions of law, its origin and nature. We review not the wisdom of their philosophies, but the legality of their acts." 287 U. S. 364, 53 S. Ct. 148, 77 L. ed. 366.

The highest courts of many of the states have concluded that there are no constitutional restrictions on the part of a court in any case to decide whether the force of its decision shall operate prospectively or retroactively.[2]

As stated by the Kentucky Court of Appeals in Haney v. City of Lexington (Ky. App.) 386 S. W. (2d) 738, 742, 10 A. L. R. (3d) 1362:

"Three courses are open to us under such a situation as is presented here: (1) We can merely announce the new rule without applying it and suggest that it should be applied to cases brought to us in the future. (2 )We can give relief to the appellant in the instant case, but deny it to any others whose injuries occurred before the date of the opinion; or (3) We can apply the rule in the instant case and permit all others who have been injured, not

---

[2] Parker v. Port Huron Hospital, 361 Mich. 1, 105 N. W. (2d) 1; Barker v. St. Louis County, 340 Mo. 986, 104 S. W. (2d) 371; Molitor v. Kaneland Community Unit Dist. No. 302, 18 Ill. (2d) 11, 163 N. E. (2d) 89; County of Los Angeles v. Faus, 48 Cal. (2d) 672, 312 P. (2d) 680; Schiller v. Lefkowitz, 242 Md. 461, 219 A. (2d) 378; Phillips Exeter Academy v. Gleason, 102 N. H. 369, 157 A. (2d) 769. See, also, Fairchild, *Recent Developments in the Area of Torts*, 46 Marquette L. Rev. 1, 13; Levy, *Realist Jurisprudence and Prospective Overruling*, 109 U. of Pa. L. Rev. 1, 13.

barred by the statute of limitations, to take advantage of the new rule."

The Supreme Court of Michigan in Parker v. Port Huron Hospital, 361 Mich. 1, 105 N. W. (2d) 1, held that there was no question of its right to make the application of a new doctrine prospective or retroactive, citing the opinion of Mr. Justice Cardozo in Sunburst. With little or no discussion the Wisconsin Supreme Court has exercised this right in Goller v. White, 20 Wis. (2d) 402, 122 N. W. (2d) 193, abrogating child-parent immunity; Widell v. Holy Trinity Catholic Church, 19 Wis. (2d) 648, 121 N. W. (2d) 249, abrogating immunity of religious societies; Kojis v. Doctors Hospital, 12 Wis. (2d) 367, 107 N. W. (2d) 131, abrogating immunity of charitable hospitals; Holytz v. City of Milwaukee, 17 Wis. (2d) 26, 115 N. W. (2d) 618, abrogating immunity of municipal corporations.

The best-known recent application of the rule has been in the criminal field where the rules of Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. ed. (2d) 1081; Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. (2d) 977; and Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. (2d) 694, have been refused retroactive application for policy reasons. See, Linkletter v. Walker, 381 U. S. 618, 85 S. Ct. 1731, 14 L. ed. (2d) 601; Johnson v. New Jersey, 384 U. S. 719, 86 S. Ct. 1772, 16 L. ed. (2d) 882. Other decisions in the criminal field such as Gideon v. Wainwright, 372 U. S. 335, 83 S. Ct. 792, 9 L. ed. (2d) 799, were applied retroactively. As stated by Mr. Justice Clark in Linkletter, "Thus, the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective. And 'there is much to be said in favor of such a rule for cases arising in the future.' "[3] As to any constitutional bar, he said, "[W]e believe that the Constitution neither prohibits nor requires retrospective effect. As Justice Cardozo said,

---

[3] For a history of retroactive-prospective application of decisions, see Linkletter v. Walker, 381 U. S. 618, 85 S. Ct. 1731, 14 L. ed. (2d) 601.

'We think the federal constitution has no voice upon the subject.' " 381 U. S. 628, 629, 85 S. Ct. 1737, 14 L. ed. (2d) 607, 608.

The rule of prospectivity is not an arbitrary classification. This court has held in State v. Pehrson, 205 Minn. 573, 577, 287 N. W. 313, 315, 123 A. L. R. 1045:

"* * * The fact that a statute discriminates in favor of a certain class does not make it arbitrary if the discrimination is founded upon a reasonable distinction or if any reasonable state of facts can be conceived to sustain it. * * * If the selection is neither capricious nor arbitrary and rests upon some reasonable consideration of difference or policy, there is no denial of equal protection of the law."

There was a reasonable rationale for not applying the new tort rule retroactively in Silesky. Many insurers had relied on the old rule as a defense and had failed to make investigations.[4] The Silesky mode of disposition is a justified concession to those interests.

Affirmed.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.

---

[4] As pointed out in Eicher v. Jones, 285 Minn. 409, 413, 173 N. W. (2d) 427, 430: "Since our statute of limitations provides that a child has until one year after his majority to bring suit for injuries sustained during his minority, retroactive application of Silesky could conceivably result in suits by minors for injuries sustained as a result of accidents occurring more than 20 years prior to the Silesky decision."