FRED H. BENSON et al.

*vs.*

THE PUBLIC SERVICE COMMISSION.

*Discontinuance of Railroad—Public Service Commission— Powers.*

Under Acts 1910, ch. 180, creating the Public Service Commission, and Acts 1914, ch. 445, enacting an additional section thereto, the commission has power to authorize the discontinuance, in whole or in part, of the exercise of its franchise by a railroad or street railroad company, when the earnings therefrom are insufficient to meet the operating expenses and fixed charges, or to keep the railroad in proper repair.

*Decided June 23rd, 1922.*

Appeal from the Circuit Court for Prince George's County, In Equity (BEALL, J.).

Bill by Fred H. Benson and others against William M. Maloy and others, constituting the Public Service Commission of Maryland, to have an order of said Commission vacated and set aside, and praying for an injunction to compel it to suspend the operation of the order. The Washington Interurban Railroad Company obtained leave to intervene as a defendant and filed its answer. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, STOCKBRIDGE, and OFFUTT, JJ.

*John U. Gardner*, for the appellants.

*Wm. Cabell Bruce*, with whom were *S. R. Bowen* and *Frederick W. Brune* on the brief, for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

The Washington, Spa Spring and Gretta Railroad Company of Prince George's County was a corporation originally formed under the general incorporation law and subsequently

by the Act of 1908, chapter 547, had its charter amended and in some ways enlarged. By this last act, the declared purpose of the corporation was that it "shall have power to lay down, construct and operate a railroad from Washington City through Prince George's County by way of Bladensburg and Berwyn Heights to the town of Laurel in said county, with lateral branches, and to operate and run its cars and rolling stock of every kind by electricity or other motive power."

This grant, as will be seen from the excerpts given from its charter, conferred on the railroad company a permissive power; it did not impose a mandatory one.

The road thus authorized was in part constructed, running from Washington to East Riverdale, and thence by way of Wildercroft and North Gretta to Berwyn Heights, but does not appear to have been built beyond the last named point. It parallels the Baltimore and Ohio Railroad Company and the Washington Interurban Railroad Company, competing with them for the traffic from these points to the City of Washington.

On October 30th, 1920, the railroad company applied to the Maryland Public Service Commission for permission to abandon and remove the track on the portion of its line between East Riverdale and Berwyn Heights, upon the ground that this portion of the road was being operated at a serious financial loss. Notice was duly given to persons likely to be affected by, or interested in, the abandonment of the operation of said road between the points named, and a date set for a hearing of the application. At the hearing a number of parties were present, objecting to the abandonment, but the commission, after hearing the objections and the testimony given, authorized such abandonment. A bill was then filed in the Circuit Court for Prince George's County asking for an injunction against the railroad to prevent such abandonment, upon the ground that the Public Service Commission had no power to authorize the same, and for other reasons which will be referred to later.

The Washington Interurban Railroad Company was not made a party by the original bill, but intervened by petition and was made a co-defendant with the Public Service Commission. Answers were filed, proof taken, and, upon hearing, the bill of complaint was dismissed. From that action of the court this appeal has been taken.

The questions thus presented to this Court are comparatively free from difficulty and have been passed upon directly or inferentially in quite a large number of cases, and in nearly every case the conclusion reached has been in entire harmony, wherever, as in this case, the franchise conferred upon the corporation was permissive in its character, not mandatory.

The Public Service Commission in this State was created by the Act of 1910. In section 26 of that act, it is provided that "no common carrier, railroad corporation, or street railroad corporation, shall begin the construction of a railroad or street railroad, or any extension thereof, or exercise any franchise or right under any provision of the railroad law, or of any other law not heretofore lawfully exercised, without first having obtained the permission and approval of the commission. The commission shall have power to grant the permission and approval herein specified whenever it shall, after due hearing, determine that such construction or such exercise of the franchise or privilege is necessary or convenient for the public service."

By chapter 445 of the Acts of 1914, an additional section was added to the foregoing, which reads as follows:

"The provisions of the next preceding section forbidding the construction by any common carrier, railroad corporation, or street railroad corporation, of a railroad or street railroad or any extension thereof, or the exercise by any such common carrier, railroad corporation, or street railroad corporation, of any franchise or right under any provision of the railroad law or of any other law not lawfully exercised before the passage of this act, without the permis-

sion and approval of the commission first obtained, and empowering the commission to grant such permission and approval whenever it shall after due hearing determine that such construction or such exercise of the franchise or privilege is necessary or convenient for the public service, shall likewise apply to the abandonment or discontinuance in whole or in part by any common carrier, railroad corporation, or street railroad corporation of the exercise of any such franchise or right, in so far as it is then actually being exercised for the public service; but every common carrier, railroad corporation, or street railroad corporation shall have the right to discontinue the operation of any portion or all of any of its existing lines whenever any franchise under which any line or any portion of same is operated shall have been repealed by act of the legislature or any municipal corporation or other governing body; provided said common carrier, railroad corporation, or street railroad corporation can show that they are not earning, at the time of such repeal, their operating expenses and other fixed charges upon the whole of such line, or upon such part thereof where any existing franchise shall have been repealed."

This section is unfortunately worded, so that it is not as clear as could be wished, but the intent of the Legislature in the passage of this act is perfectly clear, namely, of conferring upon the Public Service Commission the power in like manner to approve or disapprove of the abandonment or discontinuance in whole or in part by any common carrier, railroad corporation, or street railroad corporation of the exercise of the franchise or right conferred upon it by its charter.

It is true that the Public Service Commission, acting under a specially conferred grant of power by the Legislature, exercises only a limited jurisdiction, and where a jurisdiction is so limited, it will be strictly construed. The construction to be given, however, must be as far as possible such

as to carry out the legislative intent, not to thwart it nor to render its exercise, or inability to exercise, meaningless and absurd. The argument of the appellant is that an abandonment of a franchise once exercised can only be brought about by a repeal by the Legislature, but how would the Legislature be able to act intelligently in a case like the present? The suggestion is that the allegations of the petition must first go before the Public Service Commission in order that the facts upon which it is based may be found by that body, that such findings shall then be certified to the Legislature, and the franchise, or at least some part of it, repealed, and then such repeal go back to the Public Service Commission. The enumeration of these steps will show the absurdity of any such construction, because if the franchise, or any part of it, is repealed, there is nothing for the commission to act upon. On the other hand, if by giving to the Act of 1914 an effect, which will plainly carry out the legislative intent without involving any absurdity, that should manifestly be done.

There have been numerous instances in this State where the abandonment of a line, or a portion of one, has been sustained by the courts. Thus the principle now adverted to was fully sanctioned in the case of the *Northern Central Railroad Company,* 122 Md. 388, but this opinion, like the opinion in the *Public Service Commission* v. *Kensington Railway,* 131 Md. 649, was with reference to questions of the fares to be charged, and the same principle was again applied in *Public Service Commission* v. *Pennsylvania, B. & W. R. R.,* 122 Md. 438, which was distinctly the case of the abandonment of a portion of the line of a railroad company, and in *Public Service Commission* v. *Brooklyn and Curtis Bay L. & W. Co,.* 122 Md. 612, which, however, had to do with the extension or operation of water service. Nowhere is the controlling principle in cases of this kind better or more distinctly set out than in the opinion of JUDGE BURKE in *Public Service Commission* v. *United Rwys. and Electric Company,* 126 Md. 478, in which he quotes with approval the language of Jus-

TICE GRAY in *Northern Pacific R. R. Co.* v. *Dustin,* 142 U. S. 492, that "if the charter of a railroad corporation simply authorizes the corporation, without requiring it, to construct and maintain a railroad to a certain point, it has been held that it cannot be compelled to complete and maintain its road to that point when it would not be remunerative."

There are numerous cases in the federal courts and a number of the state courts, which have applied the same rule, but it seems superfluous to lengthen this opinion by quoting from or even enumerating the cases. It may fairly be asked whether this power had ever been vested in the Public Service Commission and, for reply to that, it is only necessary to examine the enumeration of powers contained in the original Act of 1910. That act, in defining the power to which the jurisdiction of the commission extends, includes among others, the following: "To such portion of the lines of any other railroad as lie within this State, and to person or corporation owning, leasing, operating or controlling the same, so far as concerns the construction, *maintenance,* equipment, terminal facilities and local transportation facilities and local transportation of persons or property within the State."

The use of the word "maintenance" in the above, would seem to necessarily include in it the question of abandonment, even if the Act of 1914 had never been passed. The evidence as produced in the case was overwhelming that this portion of the line so proposed to be abandoned could only be operated at a serious loss, the receipts not even meeting the operating expenses, to say nothing of the taxes and fixed charges.

Probably the strongest point upon which the appellants can rely are the words to be found in section 26 of the Act of 1910, that the operation of such road "is necessary or convenient for the public service." It may not be entirely easy to give a strict definition of this language, but the same expression is found in a number of other acts in which,

where cases have arisen, the abandonment of the line has received judicial approval, when it has been shown, far less conclusively than in the present case, that the operation must result in so serious a financial loss as to render it certain that the road would, before the lapse of much time, inevitably go into the hands of receivers. That was the case of the original corporation here, and it was from such receiver that the title of the Washington Interurban Railroad Company was derived through a sale made by the receiver to a Mr. Herre. What constitute for a common carrier the elements which make the operation of the roads necessary or convenient for the public service? Suppose it be a single passenger a day, is he the public? If not, what other measure can be found by which to formulate the meaning to be given to this expression? Manifestly, from the adjudicated cases, the only safe criterion in that regard is that which has heretofore been laid down by the Court, the measure of which is the ability of the road from its earnings to meet its operating expenses and fixed charges, to say nothing of any return whatever to the stockholders of the company.

In addition to what has already been said, it should be mentioned that the testimony is undisputed that the physical condition of the road has deteriorated to a point where its continued operation would inevitably lead at no distant day to a serious catastrophe, and with the railroad having nothing wherewith to compensate the maimed or injured in such an event. It is clear that the income of the road is insufficient to enable it to make the much needed repairs to its right of way and roadbed, thus amply justifying the finding of the commission and of the Circuit Court for Prince George's County. The decree appealed from will accordingly be affirmed.

*Decree affirmed, with costs.*