NORWOOD HEIGHTS IMPROVEMENT
ASSOCIATION, INC. *v.*
MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 146, October Term, 1949.]

2

*Decided March 10, 1950.*

4

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*John F. Heath* for the appellant.

*Hamilton O'Dunne, Assistant City Solicitor of Baltimore,* with whom was *Thomas N. Biddison, City Solicitor,* on the brief, for the Mayor and City Council of Baltimore.

*M. William Adelson,* with whom was *William B. Davidson* on the brief, for the College Gardens Corporation.

GRASON, J., delivered the opinion of the Court.

The College Gardens Corporation (herein called Corporation) applied to the Buildings Engineer of Baltimore City for permits for the erection of dwelling units, which were granted. The Board of Municipal and Zoning Appeals, after a careful and thorough hearing, affirmed the action of the Buildings Engineer, and an appeal was taken by The Norwood Heights Improvement Association, Inc. (herein called Association) to the Baltimore City Court, in which the Association made the Mayor and City Council of Baltimore defendant. The court permitted the Corporation to intervene, and after hearing testimony in the case it affirmed the decision of the Board, and from that ruling the case comes here on appeal.

The Corporation owns a tract of land comprising eighty- two acres situated in the northwestern section of Baltimore City. It is unimproved land. On the north it is bounded by the Frederick Road, on the south and east by Loudon Park Cemetery, and on the west is the

property referred to as Carozza's land. The evidence shows that a permit has been issued to Carozza for the development of a project similar to the project of the Corporation. The Corporation proposes to utilize thirty-five acres of its land for its proposed project. These thirty-five acres are enclosed, or surrounded, by the remaining land of the Corporation. The thirty-five acre tract is shown on a plat filed in the case. Looking at the plat, the development appears to be in the shape of a horse-shoe. The narrow part is to the west, and extending from the west to the east end of the tract in a half circle, on the northerly side thereof, will be a street to be called Parkton Street. From the west, on the entire southern side, in a half circle, will be Maidville Drive. These two streets meet at the easternmost end, and together constitute one road around the entire tract. On each side of these roads will be apartment houses. In the middle of this development, and extending through the whole of the same, in a northerly and southerly direction, will be Yale Avenue. These are the main streets as shown on the plat, and from them, projecting back to these apartment houses, are streets twenty feet wide, which terminate in open spaces about sixty feet square, which are to be used for parking purposes.

Provision is made to accommodate poles for electric lights and telephones, the installation of a sewer system, laying of pipes for water, and such other matters as are required by law. All departments of the City government that must approve such a project have approved this proposed development.

There were thirty-one permits issued by the Buildings Engineer. Permits Nos. 1 to 26 cover groups of individual apartments that will contain two bedrooms, and some will contain three. The houses to be built under those permits are really row houses. They front on the main streets and on streets running therefrom to the parking spaces mentioned. All of these apartments will be under the single ownership, management and operation of the Corporation.

On the five lots affected by permits Nos. 27 to 31, the Corporation is authorized to build apartment buildings, which will be larger than the apartments covered by the other permits. Four of these permits apply to apartment buildings to be built on corner lots, and the buildings to be erected on these lots differ from the other apartments in that each building has two numbers on it, its own heating plant and sewer line and water connection, but each building is one building and not two buildings as contended by the Association.

Mr. Macht testified that he saw personally the various department heads that have to approve building plans and they approved the plans in this case and the permits were issued.

In its petition filed in the court below the Association stated: "The grounds upon which this appeal is taken is that, the issuance of the above permits are in violation of Paragraphs 8-11-20-21-22-23-24-29-31-32-34-b and 44 of Ordinance No. 1247, approved March 30, 1931, and for such other and further reasons to be shown at the hearing of this appeal."

Paragraph 35, Court Review, (a) of Ordinance 1247, among other things, provides: "Any person or persons jointly or severally aggrieved by any decision of the Board of Zoning Appeals, or any taxpayer, or any officer, department, board or bureau of the municipality, may present to the Baltimore City Court a petition, duly verified, setting forth that such decision is illegal, in whole or in part, and *specifying the grounds of the illegality*. Such petition shall be presented to the court within thirty days after filing of the decision in the office of the Board." (Italics supplied).

The petition filed by the Association alleges that the permits issued in this case violate twelve paragraphs of the Ordinance, which are set out numerically. There are no allegations in the petition stating facts which show how any of these twelve paragraphs were violated. Counsel for the Association merely handed these twelve paragraphs to the Board apparently with the expectation

that something in the evidence would show a violation of some of the provisions of the Ordinance specified. It would be an absurd construction of the paragraph of the Ordinance quoted, that a petitioner could set out, as was done in this case, twelve provisions of the Ordinance without alleging facts to show their violation. On the contrary, a petitioner must set out specifically the fact which he contends is a violation of a particular paragraph of the Ordinance, otherwise he has set out no cause whatever. If a petitioner can set out violations of twelve provisions of the Ordinance, without facts to show violations, he could present to the Board the Ordinance itself and tell the Board to wait for evidence to be offered which would constitute violations. The record shows fully the proceedings before the Board, and counsel for the Association was asked by its members and counsel for the Corporation to point out facts showing any violation of the Ordinance. His answers were evasive, argumentative, and contentious. In fact, we are of opinion that there was no evidence before the Board to show that the permits were improperly issued, and that the objections to the issuance of these permits by the Association were frivolous.

Objection was made that the certificate of incorporation of the College Gardens Corporation was not issued to it until after it applied for the permits. Certain provisions of Article 23, section 6 of the 1939 Code (which deals with corporations) and Chapter 14, Paragraph 1407 of the Building Code of Baltimore City are cited for the contention that it was illegal to issue these permits because the certificate of incorporation had not been issued to the Corporation at that time. It is conceded that at the time of the hearing before the Board the certificate of incorporation had been issued and that the College Gardens Corporation was a corporation under the laws of the State of Maryland. Neither the Zoning Board, nor the Baltimore City Court on appeal from it, has any authority under Zoning Ordinance 1247 to construe the corporation law of the State of Maryland, or the building

code of Baltimore City. The Zoning Board deals strictly with Zoning, which determines how an owner can use or not use his land.

"The Board of Zoning Appeals does not, however, issue permits; that is done by the Buildings Engineer after the board has decided any contest; * * *." *Akers v. Mayor and City Council of Baltimore,* 179 Md. 448, at page 454, 20 A. 2d 181, at page 184.

The appellant specifically objects that the house numbers to be given the five apartment buildings to be erected are illegal. He says that they will be given two numbers for one house. He refers to the corner apartment houses. But, again, the Zoning Ordinance has nothing to do with numbering new houses. Section 76 (c), Baltimore City Charter, 1946. ▮The general scheme of the development in this case has been approved in *Akers v. Mayor and City Council of Baltimore, supra.*

From what we have said, the lower court was correct in dismissing the appellant's appeal and affirming the ruling of the Zoning Board of Appeals.

A motion was filed by the appellees to dismiss the appeal because it was not shown that the Association was a taxpayer, or that any of its members were taxpayers and lived in the neighborhood of the property involved in this case. The Association was plaintiff and the Mayor and City Council of Baltimore was defendant in the case in 191 Md. 155, 60 A. 2d 192, and it is cited by the Association. But in that case the question of whether the Association was a proper party was not raised. It may have led it to the erroneous conclusion that we had there decided it had a right to appeal. For that reason, we have considered the question raised, but we hold that the appellant had no authority under the statute to appeal, and its appeal here must, therefore, be dismissed.

*Appeal dismissed, with costs.*