760 A.2d 1087

MID–ATLANTIC POWER SUPPLY ASSOCIATION

v.

PUBLIC SERVICE COMMISSION OF MARYLAND et al.

No. 157, Sept. Term, 1999.

Court of Appeals of Maryland.

July 20, 2000 (PER CURIAM ORDER).

Oct. 12, 2000 (OPINION).

Kenneth L. Wiseman (Thomas R. Kline and Mark F. Sundback of Andrews & Kurth L.L.P.), Washington, DC, for petitioner.

Deborah E. Jennings (Brett Ingerman of Piper, Marbury, Rudnick & Wolfe, LLP), Susan Stevens Miller, General Counsel (Public Service Com'n of Maryland), Michael J. Travieso (Sandra M. Guthorn and William F. Fields, Office of People's Counsel), Thomas C. Gorak (Gorak & Bay L.L.C.), Baltimore, J. Joseph Curran, Jr., Atty. Gen. (M. Brent Hare, Asst. Atty. Gen.), Annapolis, Allan J. Malester (Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC), Henry J. Suelau (Miles & Stockbridge, P.C.), Jeral A. Milton, Baltimore, for respondents.

Gordon J. Smith, John & Hengerer, Brief of National Energy Marketers Ass'n filed on behalf of the petitioner, Washington, DC, for Amicus Curiae.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

## PER CURIAM ORDER

For reasons to be stated in an opinion later to be filed, the Court having heard oral argument in the above captioned case, and having concluded that the appellant has standing to seek judicial review, it is this 20 th day of July, 2000,

ORDERED, by the Court of Appeals of Maryland, a majority of the Court concurring, that the judgment of the Circuit Court for Baltimore City be, and it is hereby, reversed, and

the case is remanded to the Circuit Court for Baltimore City for further proceedings, and it is further

ORDERED that the stays imposed by the Court in accordance with its Order dated June 30, 2000, on the judgment of the Circuit Court for Baltimore City dated April 21, 2000, and entered May 18, 2000, and on Order # 75757 of the Public Service Commission of Maryland filed November 10, 1999, be, and they are hereby, dissolved, without prejudice to applying to the Circuit Court for a stay pending judicial review, and it is further

ORDERED that the mandate shall issue forthwith; costs to be paid by the appellees.

## OPINION

BELL, Chief Judge.

The issue this case presents is whether the appellant, Mid–Atlantic Power Supply Association ("MAPSA"), a trade association of companies who are interested in becoming suppliers of electricity in Maryland,[1] and a party to the proceedings in the Public Service Commission, has standing to seek judicial review of the order, issued by the appellee Public Service Commission ("PSC"), approving the stipulation and settlement agreement, entered into by and between appellees Baltimore Gas and Electric Company ("BGE"), the Maryland Office of People's Counsel ("OPC"), the Maryland Natural Resources–Maryland Energy Administration and the Power Plant Research Program ("DNR/MEA") and others, collectively representing all customer classes, environmental interests and the public at large.[2] The Circuit Court for Baltimore City determined that the appellant had no standing and, accordingly,

---

1. The appellant argues that, as a policy matter, trade associations should have standing to seek judicial review as often they are the most efficient and economical means of providing input necessary to the decision making process. We do not reach the policy issue in view of our resolution of the case as a matter of statutory construction.

2. Along with its petition for judicial review, the appellant moved, in the Circuit Court, to stay certain portions of the Public Service Commission

dismissed its petition for judicial review. We granted the appellant's petition for writ of certiorari and, following oral argument on July 20, 2000, issued our decision reversing the judgment of the Circuit Court and remanding the case to that court to conduct judicial review. We now explain the reasons for that decision.

The seeds of this controversy were sown first when the PSC developed policy initiatives designed to restructure the electric industry in Maryland, *i.e.*, develop a market capable of supporting competition for the sale of electricity in the BGE service area, and later when the Electric Customer Choice and Competition Act of 1999 was enacted by the General Assembly and signed into law by the Governor. *See* 1999 Md. Laws. Chap. 3. Pursuant to, and in accordance with, the PSC's initiatives, BGE filed an application setting forth its restructuring plan. It was docketed in Commission Case 8794. The OPC also filed a petition to reduce the rates charged by BGE. That case, docketed as Case 8804, was consolidated with Case 8794.

The appellant is a Pennsylvania corporation which operates as a trade association for companies participating in both the wholesale and retail electric supply markets in Maryland, Delaware, Pennsylvania, New Jersey, Ohio and the District of Columbia. In that capacity, it filed a petition to intervene in the OPC's rate reduction action. That petition was granted.[3]

order, in particular, *inter alia*, those relating to BGE's recovery of stranded costs and collection of the competitive transition charge. The motion to stay was denied by that court and subsequently by the Court of Special Appeals. Therefore, the petition for certiorari and, thus, the issue being reviewed, was presented to the Court in the context of a request for stay, which the Court granted, along with its grant of certiorari, pending, and to be addressed during, the Court's review of the merits of the standing issue. After oral argument, the Court announced the decision on the standing issue and lifted its stay. The stay, thus, no longer is before this Court and, therefore, will not be further addressed.

3. Intervention in proceedings before the Public Service Commission is governed by Maryland Code (1998) § 3–106 of the Public Utility Companies Article, which provides:

When that occurred, because, as we have seen, that matter and the restructuring plan had been consolidated, the appellant was enabled to, and did, participate fully in the negotiations leading up to the settlement at issue. Obviously, its opposition, and that of two other parties, as to those provisions of the settlement addressing the stranded costs, the allocation of the rate reduction and the unbundling of rates, did not prevail and the appellant refused to sign the settlement agreement reached by BGE and several other parties, which was signed on June 29, 1999. Once the settlement had been reached, the appellant thereafter participated in the proceedings in the PSC, challenging those terms of the settlement that it earlier had opposed in negotiations. Its efforts in the PSC were no more successful than during negotiations. When the PSC approved the settlement, by Commission Order No. 75757, on November 10, 1999, the appellant filed its petition for judicial review.[4]

---

"(a) *Application.*—If a person timely files, the person may apply to intervene in a proceeding before the Commission.

"(b) *Decision.*—The Commission shall grant leave to intervene unless the Commission concludes that:

"(1) the parties to the proceeding adequately represent the interest of the person seeking to intervene; or

"(2) the issues that the person seeks to raise are irrelevant or immaterial.

"(c) *Rights of intervener.*—(1) An intervenor has all the rights of a party to a proceeding.

"(2) In a proceeding before the Commission, an individual who is an intervenor may represent himself or herself."

The appellant submitted, in its petition for certiorari and brief on the merits, that "[b]ecause the other parties to the proceeding did not adequately represent MAPSA's interest, MAPSA's intervention was granted...." On the other hand, the Circuit Court, ruling on the motion for summary judgment on the standing issue, noted that "petitioner MAPSA was granted leave to intervene in the Commission's proceedings in accordance with longstanding PSC tradition which encourages the involvement of all interested parties to participate in the establishment of public policy and regulations governing Maryland's public utilities."

4. The petition was filed in the Circuit Court for Prince George's County, but transferred, with the consent of BGE and the appellant to the Circuit Court for Baltimore City.

BGE moved for summary judgment on the issue of the appellant's standing to prosecute a judicial review proceeding. It argued in the motion and before the Circuit Court that the appellant was not "a party or person in interest," pointing out that, as an association, operating only in a representative capacity, it had no interest in the proceedings separate and distinct from the interests of its members. Rejecting the appellant's rebuttal—it was a party before the Commission, participating fully in the proceedings, it meets the definition of party, and, in any event, the controlling statute clearly and unambiguously gives it standing [5]—the court agreed with BGE and thus granted the motion for summary judgment. In reaching its conclusion, it relied on the legislative history of the statute, rather than the clear import of the language:

"What [the appellant's] argument ignores . . . is that which came to the attention of the Court of Appeals, namely the

---

5. The appellant contended in the Circuit Court, citing *Bosley v. Dorsey*, 191 Md. 229, 239–40, 60 A.2d 691, 696 (1948) and, in particular, Maryland Code (1939) Article 23, §§ 359 and 425, the latter section being the predecessor to Maryland Code (1998) § 3–302 of the Public Utilities Companies Article, that associations have traditionally been authorized to seek judicial review of orders of the Public Service Commission.

Article 23, § 359 provided:

"Any company, corporation, association, person or partnership subject to any of the provisions of this sub-title, or other person or party in interest, shall have the right to proceed in the courts to vacate, set aside or have modified any order of said Commission on the grounds that such order is unreasonable or unlawful, as hereinafter more particularly set forth."

Article 23, § 425 provided:

"Any corporation subject to this sub-title, or any of the provisions of this sub-title, and any person in interest being dissatisfied with any order of the commission, fixing any rate or rates, tolls, charges, schedules, joint rate or rates, or any order fixing any regulations, practices, acts or service, may commence any action in the Circuit Court for any county, or before any judge of the Supreme Bench of Baltimore City, in any court of Baltimore City of appropriate jurisdiction which may be adopted for the purpose, against the commission as defendant to vacate and set aside any such order on the ground that the rate or rates, tolls, charges, schedules, joint rate or rates, fixed in such order is unlawful, or that any such regulation, practice, act or service fixed in such order is unreasonable, in which action a copy of the complaint shall be served with the summons."

active legislative efforts to amend the Public Service Commission law then underway. In fact, an effort to establish appeal rights for the Office of People's Counsel in the 1947 General Assembly had been defeated and that was one of the bases for the Court's decision in *Bosley v. Dorsey*, 191 Md. [229,] 239–40[, 60 A.2d 691, 696 (1948) ]. Rather than misread the current statutory standard for judicial review for the purpose of historical consistency, this Court is persuaded by the historical significance of the fact that the current codification of the law abandons the reference to an 'association' as having the right to obtain judicial review of PSC orders. That entitlement is limited now, with statutory exceptions, to 'a party or person in interest' and this term of art is undefined in the statutory scheme. Whether the Court analogizes to an 'aggrieved party in a contested case,' who is entitled to judicial review of a final decision under the Maryland Administrative Procedure Act or merely looks to the language of the PSC cases cited in *Bosley v. Dorsey*, 191 Md. at 235–36[, 60 A.2d at 694], the inescapable result is that 'party or person in interest' is reasonably interpreted to be an entity having 'an interest adversely affected by the order.' " *Public Service Commission v. Byron*, 153 Md. 464, 471 [, 138 A. 404, 407] (1927).

(citation omitted).

The court accordingly dismissed the appellant's petition for judicial review, with prejudice. As already mentioned, we granted the appellant's petition for writ of certiorari and reversed that judgment.

 The canons of statutory construction are well settled. We recently reaffirmed those, relevant and dispositive of this case in *Mayor & City Council of Baltimore v. Chase*, 360 Md. 121, 128, 756 A.2d 987, 991 (2000). In that case, quoting *Chesapeake and Potomac Tel. Co. of Md. v. Dir. of Fin. for Mayor and City Council of Baltimore*, 343 Md. 567, 578, 683 A.2d 512, 517–18 (1996), we said, in that regard, that in pursuing the real goal of statutory interpretation, the discernment of the intent of the Legislature, we begin our inquiry

with the words of the statute and, when they are clear and unambiguous, we end it there, as well. The point was made yet again that we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words the Legislature used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning. Moreover, whenever possible, the statute should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.

▌ We also reviewed those canons applicable when the statute to be interpreted is a part of a statutory scheme. Quoting *GEICO v. Insurance Comm'r*, 332 Md. 124, 131–32, 630 A.2d 713, 717–18 (1993), we noted the necessity of reading statutes on the same subject together, harmonizing them to the extent possible, and that such statutes are to be read to avoid rendering either of them, or "any portion, meaningless, surplusage, superfluous or nugatory." *Id.* at 132, 630 A.2d at 717. While we acknowledged the role that legislative history plays in the interpretation of statutes, even when the words the Legislature used are clear and unambiguous, *see Harris v. State*, 331 Md. 137, 146, 626 A.2d 946, 950 (1993), indicating that, in the interest of completeness, we may, and sometimes will, review the legislative history of a clear statute, we explained, quoting *Coleman v. State*, 281 Md. 538, 546, 380 A.2d 49, 54 (1977) ("a court may not as a general rule surmise a legislative intention contrary to the plain language of a statute or insert exceptions not made by the legislature"), that "the resort to legislative history is a confirmatory process; it is not undertaken to contradict the plain meaning of the statute." *Chase*, 360 Md. at 131, 756 A.2d at 993.

▌ The right to judicial review of an order or decision of the Public Service Commission is controlled by Maryland Code (1999) § 3–202(a) of the Public Utility Companies Article. It provides:

"(a) *In general.*—Except for the staff of the Commission, a party or person in interest, including the People's Counsel, that is dissatisfied by a final decision or order of the

Commission may seek judicial review of the decision or order as provided in this subtitle."

The statute is clear and unambiguous. By its plain language, to be eligible to seek judicial review of a Commission order or decision, the petitioner must be a "party or person in interest" and be "dissatisfied" with the decision or order. We believe that the status test is fulfilled if the petitioner is either a party to the proceedings before the Commission or, if not a party, a "person in interest." The appellant qualifies, we believe, under either status.

"Person" is a defined term under the Public Utility Companies Article. Section 1–101(s) of that Article defines that term to mean "an individual, receiver, trustee, guardian, personal representative, fiduciary, or representative of any kind and any partnership, firm, association, corporation, or other entity." Under this definition, as the parties agree, the appellant, an association, albeit a trade association, is a person.

■ The appellant was, as we have seen and the parties to these proceedings also agree, a party before the PSC. Because it moved, and was allowed, to intervene, Maryland Code (1998) § 3–106 of the Public Utility Companies Article, governing intervention in Commission proceedings, is implicated. Because § 3–106 defines the meaning of "party," as used in § 3–202(a), it and § 3–202(a) must be read together. Section 3–106 provides that a person shall be permitted to intervene if the person makes timely application and the Commission concludes that the interests of that person are not being adequately represented and that the issue or issues the person seeks to raise are neither irrelevant nor immaterial. Thus, to become a party to a proceeding before the Commission, a party must have been determined, by the Commission, to have an interest in the proceeding that is not being adequately represented and that interest, in turn, has been determined not to be frivolous or of no consequence to the proceeding.[6]

---

6. The appellees state that "the requirements for participating as a 'party' at the administrative level are not very strict," a position, they

Once intervention has been granted, the person has all the rights of a party to the proceeding. In this case, having intervened, the appellant participated fully in the PSC proceedings at which the settlement agreement underlying the Commission order was approved by the Commission.

Section 3–106 also informs the meaning of the phrase, "person in interest." As we have seen, to intervene requires that there be an interest that the person seeking to intervene has that is not being adequately represented. It follows that, once intervention has been granted, the interest that the Commission has found the person to have had is not dissipated.

■ The requirement that there be dissatisfaction with the order or decision sought to be reviewed is fulfilled when the party or person in interest seeks judicial review, proffering reasons for the court to reverse the order or decision. In this case, the appellant has sought judicial review and, more to the point, it has advanced a rational basis for the overturning of the order,[7] *i.e.*, that the settlement agreement approved by the Commission does not comply with the mandate of the Electric Customer Choice and Competition Act.[8] In any event, there is

---

suggest, with which the Commission agreed, as demonstrated by its order, stating that "all entities that requested leave to intervene in these consolidated proceedings were granted party status." Contrary to the position of the appellees and apparently the Commission, the intervention statute seems to require more than a perfunctory review, which perhaps was not done, but with which the Commission is charged nonetheless.

7. By characterizing the appellant's basis for seeking to overturn the settlement agreement and thus the Commission's order as "rational," we are not commenting on the merits of its argument, only its bona fides as entitling the appellant to seek judicial review.

8. In addition, the appellant, in its petition for certiorari, offered three indicia of its dissatisfaction with the Commission order:
"(i) MAPSA opposed and did not sign the settlement underlying the Commission Order (ii) MAPSA sought judicial review of the Commission Order, and (iii) MAPSA has sought to stay selected portions of the Commission Order while it prosecutes its petition for judicial review."

no serious dispute that the appellant is "dissatisfied" with the decision and order of the PSC.

The appellees view the issue quite differently. As they see it, and argue, rather than dissatisfaction, the applicable test for standing is "aggrievement." In support of this conclusion, the appellees rely on the "modifying phrase 'in interest,'" used in § 3–202(a), the legislative history of § 3–202(a), language in cases applying § 3–202(a),[9] and the fact that "this Court has consistently held, in analogous contexts, that an association is not aggrieved or entitled to judicial review unless the association itself has an interest at stake that is separate and distinct from the interests of its members."

As to the phrase, "in interest," citing *Bosley v. Dorsey*, 191 Md. at 236, 60 A.2d at 694 (1948), *Public Service Comm'n v. Byron*, 153 Md. 464, 471, 138 A. 404, 406 (1927) and *Gregg v. Laird*, 121 Md. 1, 32, 87 A. 1111, 1114 (1913), the appellees assert that this Court has interpreted it to mean "having an interest adversely affected by the order [of the Commission]." To be sure, the Court made the statements attributed to it in those cases; however, context is critical. In *Bosley*, for example, the issue had nothing to do with the standing of an association to seek judicial review of an order as to which it was dissatisfied. The question before the Court was whether the People's Counsel had standing to seek judicial review, in

---

**9.** It goes without saying that the appellant does not agree. In fact, it believes, and argues, that the language in the cases is nothing more than generic commentary. It asserts:

"[T]he Court in [*Gregg v.*] *Laird*, [121 Md. 1, 87 A. 1111 (1913)] simply pointed out that 'the rights of *parties* who *may feel* aggrieved by the action of the commission are fully guarded and protected by the' judicial review provision of the then newly enacted PSC law. 121 Md. at 32–33, 87 A. at 1114 (emphasis added). Thus, the Court's generic commentary in *Laird* cannot be read as establishing a particularized standard of harm. Likewise, the Court in [*Public Service Commission v.*] *Byron*, 153 Md. [464,] 474, 138 A. [404,] 408 [(1927)], described a judicial review proceeding under the PSC Law as one arising from 'an order passed at the conclusion of an issue which has been heard and determined by a competent tribunal and in such a manner as to *cause dissatisfaction* to any corporation subject to the act or to any other party in interest.'" (emphasis added) (citation omitted).

his own right, under the applicable provisions of the Public Service Commission Law then in effect, *see* note 5, *supra*, where Maryland Code (1939) Article 23, §§ 359 and 425, the applicable provisions, are set out,. that is, "whether the People's Counsel is a 'person in interest' within the contemplation of the statute." *Id.* at 233, 60 A.2d at 693. The Court, having noted that "[o]rdinarily an attorney is not a party to a suit in which he merely acts in a professional capacity in representing a litigant," *id.* at 234, 60 A.2d at 693, citing *Pressman v. Elgin*, 187 Md. 446, 50 A.2d 560 (1947), set out People's Counsel's contention, that his right to seek judicial review was as the agent of the persons affected by the Commission's order, not that he was injuriously affected by that order. *Id.* It was in this context that the Court addressed the meaning of a person in interest.

After tracing the development of the Office of People's Counsel, the Court addressed who was authorized to seek judicial review under §§ 359 and 425:

"In *Gregg v. [Laird] Public Service Commission*, 121 Md. 1, 32, 87 A. 1111, 1114 [ (1913) ], the first test of the Public Service Commission Law, the Court of Appeals held that, while the statute did not use the word 'appeal' in connection with the right to challenge an order of the Commission, the rights of any parties aggrieved by any action of the Commission were fully safeguarded by the provision that any corporation subject to the statute and 'any person in interest being dissatisfied with any order' may commence a suit against the Commission. Appeals from an order of the Commission may be taken either by a regulated public utility or by any individuals or corporations having an interest adversely affected by the order. *Public Service Commission v. Byron*, 153 Md. 464, 471, 138 A. 404 [, 407 (1927) ].[10]"

---

**10.** In *Public Service Comm'n v. Byron,* 153 Md. 464, 138 A. 404 (1927), one of the issues before the Court was whether the City of Hagerstown, which was a beneficiary, was a necessary party to an action against the Public Service Commission challenging certain of its orders, initiated.

The Court held that People's Counsel was a "person in interest" under Art. 23, §§ 359 and 415. *Id.* In addition to pointing out the duties of People's Counsel were the same as those of the former Assistant Attorney, *id.* at 236, 60 A.2d at 694, it reasoned:

"It is conceded that at no time from 1912 to 1922 did the Assistant General Counsel have the privilege to appeal from orders of the Commission. But complainant earnestly contended that the statute gives him the right to appeal by implication. He argued that the People's Counsel is not a subordinate of the General Counsel, as was the Assistant General Counsel, but is an appointee of the Governor and an agent for the customers of the utilities with no allegiance to the Commission. We cannot, however, brush aside the fact that the Legislature, in transferring the functions of Assistant General Counsel to People's Counsel, laid down for the People's Counsel the same duties which were performed by the Assistant General Counsel. Under the State Reorganization Act, which took effect January 1, 1923, the office of Assistant General Counsel was abolished, and the Governor

---

pursuant to Maryland Code (1924) Article 23, § 414, the predecessor to Maryland Code (1939) Article 23, § 425, in effect in *Bosley v. Dorsey*, 191 Md. 229, 60 A.2d 691 (1948). Noting that "[w]hile any corporation subject to the provisions of the statute or any person in interest may become plaintiff, the language of the statute plainly prescribes the commission as the only necessary defendant," *Byron*, 153 Md. at 471, 138 A. at 407, the Court made the point that, consistent with that section, "[i]f any corporate or private interest is adversely affected, it may attempt to enforce its position under the section cited, and hence its failure so to proceed is an indication of satisfaction or acquiescence in the order, which by statute will not be set aside or changed unless in the authorized action its opponent shall show by clear and satisfactory evidence that the order complained of is unlawful or unreasonable." *Id.* at 471, 138 A. at 407 (*citing* Md.Code [(1939)] Art. 23, § 408) We said further: "As the municipality was interested in the outcome of the proceedings, it would have been a proper party, and upon application could have been made, in the discretion of the trial court, a defendant." *Id.* at 473, 138 A. at 407 (*citing Benson v. Public Service Commission*, 141 Md. 398, 118 A. 852 (1922)); *Chenoweth v. Public Service Commission*, 143 Md. 622, 123 A. 77 (1923); *Wichita Railroad and Light Co. v. Kansas Public Utilities Commission*, 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124 (1922).

of Maryland was authorized to appoint the People's Counsel. The Act provided that all the rights, powers and duties which had been conferred upon the Assistant General Counsel 'shall be transferred to and thereafter be exercised and performed by said people's counsel, who shall be the lawful successor of said Assistant General Counsel.' Laws of 1922, ch. 29, art. 13.

"While the Public Service Commission Law makes it the duty of the People's Counsel to appear before the Commission on behalf of the public or in defense of the public interests (Laws of 1912, ch. 563, Laws of 1924, ch. 534, Laws of 1927, ch. 201, Code 1939, art. 23, sec. 353), it does not authorize him to prosecute appeals from orders of the Commission. It is also significant that Section 353, after providing that the services of the experts employed by the Commission and also its records and other facilities shall be availed of by the People's Counsel in the performance of his public duties, further provides that nothing contained therein shall prevent 'any party or interest' in any proceeding before the Commission from appearing in person or from being represented by counsel. As the People's Counsel is himself an attorney required to appear before the Commission, this provision strongly indicates that the Legislature did not consider him as a 'party or interest.' "

*Id.* at 236–37, 60 A.2d at 694. The Court was also persuaded by the fact that it was the Commission's practice to "call upon People's Counsel to support its orders." *Id.* at 239, 60 A.2d at 695. Moreover, it rejected the argument that a court is "at liberty to surmise a legislative intent contrary to the letter of the statute, or to indulge in the license of inserting or omitting words with the object of making the statute express an intent which is not evidenced in the original form." *Id.* at 237, 60 A.2d at 694. *See also, Public Service Comm'n of Maryland v. Maryland People's Counsel,* 309 Md. 1, 8–9, 522 A.2d 369, 372–73 (1987).

In neither *Gregg* nor *Byron* was the issue this case presents addressed. In *Byron,* there were two issues, whether a municipality benefitted by the Commission order was a neces-

sary party to an action challenging the subject order and whether the Circuit Court for Baltimore City was the proper venue. *See* 153 Md. at 469, 138 A. at 406. Among the various questions raised in *Gregg* was whether the "action of the Commission amount[ed] to the granting of an execution before judgment [was] entered against the appellant." 121 Md. at 32, 87 A. at 1114. It was in the course of responding to that argument that the statements concerning the interest of the challenger of the Commission's order were made.

It is significant, we believe, that as enacted and when *Bosley* was decided, the law addressed the standing issue solely by reference to those entities to whom the Public Service Commission Law applied or as to whom it had an effect; it did not define, and, indeed, there was no statute which delineated, the rights to judicial review of a party to proceedings before the Commission. Only in Maryland Code (1951) Art. 78 § 16(d) [11] was the term "party" used. That section, as did its predecessor, prescribed in very general terms the entities who could resort to the courts to challenge Commission orders. Section 74(a), former § 415(a), however, set out the standard necessary to be met to have standing to maintain such a challenge. Significantly, that section referred only to "person in interest," after, again cataloguing the entities to which the law applies. Only with the re-codification of the Public Service Commission law, *see* 1955 Md. Laws, Chap. 441, did the concept of "party" become a part of the section of the law delineating the test for standing. *See* Maryland Code (1955, 1995 Repl.Vol.) Art. 78, § 83. And the re-codification provided for intervention in the Commission proceedings.

The appellees argue that "in interest," as used in § 3–202, and as enacted in § 83, modifies both "party" and "person" and, so,

---

**11.** By ch. 135, 1951 Laws of Maryland, the provisions of the Public Service Commission law were removed from Article 23 and placed in Article 78 of the Maryland Code. Section 16 of Art. 78 was formerly § 359 of Art. 23.

"the requirements set forth in *Gregg, Byron* and *Bosley,* that only 'regulated' entities and other persons or parties 'in interest,' *i.e.,* adversely affected, may obtain judicial review of a Commission order continue to control. Only associations (and other entities) 'subject to regulation' by the Commission and persons or parties 'in interest' have standing to appeal Commission decisions."

They maintain, in other words, that the only substantive change effected by the 1955 re-codification of the Public Service Commission Law was the consolidation into one provision of the several that theretofore had addressed the issue.[12] Support for the argument was found in a Staff Report to the Commission on Administrative Organization of the State, recommending no change to the existing judicial review requirements,[13] the "Report of the Commission to Revise and Recodify the Laws Concerning the Public Service Commission," which, like the Staff Report, contained no explicit recommendation to change the judicial review requirements [14] and the absence of an explanatory note to § 83 indicating such an intention.

We are not persuaded. The argument flies in the face of the plain and unambiguous language of the statute. More-

---

12. In addition to §§ 16(d) and 74(a), § 21, relating to taxicabs, also addressed judicial review. It provided:

"Any person, association, or corporation of interest who shall be dissatisfied at action of the Public Service Commission for refusing to grant a permit or for any ruling, order or regulation hereunder, shall have the right of an appeal as provided in Section 74 of this Article and to the Court of Appeals."

13. The author of the Staff Report was Melvin Sykes, Esq., who wrote: "[c]orporations and persons in interest may appeal from commission orders by filing in the Circuit Court.... The provisions for judicial review are well-drawn, brief and easily understood."

14. The introduction to the Report contained the following: "changes in phraselogy of the present law are not intended to effect any change in meaning unless such intention is specifically stated in the explanatory notes, or the clear language of the draft leads inescapably to the conclusion that some change in meaning must have been intended."

over, the drastic change in focus of the judicial review provision leads to the opposite conclusion. Before 1955, to seek judicial review, one need not have been a party to the Commission proceeding, just subject to the law or affected by the decision to be challenged. With the re-codification not only one interested or adversely affected by the decision was able to challenge the decision, but so, too, were those who were parties to the proceeding out of which the ruling to be challenged emanated. Thus, the clear language of the statute itself "leads, [and must have led the General Assembly,] to the conclusion that some change in meaning must have been intended."

The appellees rely finally on Maryland cases indicating that an association is aggrieved and entitled to judicial review only when it has an interest or stake in the case separate and distinct from the interests of the members whose interests it represents, *see Citizens Planning & Housing Ass'n v. County Executive of Baltimore County*, 273 Md. 333, 345, 329 A.2d 681, 687–88 (1974); *Bryniarski v. Montgomery County*, 247 Md. 137, 142–46, 230 A.2d 289, 293 (1967); *Norwood Heights Improvement Ass'n v. Mayor & City Council of Baltimore*, 195 Md. 1, 8, 72 A.2d 1, 4 (1950); *Maryland Naturopathic Ass'n v. Kloman*, 191 Md. 626, 630, 62 A.2d 538, 539 (1948), whether or not the association has participated as a party in the agency proceedings. *See Medical Waste Assoc. v. Maryland Waste Coalition*, 327 Md. 596, 613, 612 A.2d 241, 249–50 (1992); *Sugarloaf Citizens' Ass'n v. Department of the Env.*, 344 Md. 271, 286, 686 A.2d 605, 613 (1996). Although not relied on by the appellees, this principle also is embodied in the Maryland Administrative Procedure Act, *see* Maryland Code (1984, 1999 Repl. Vol.) § 10–222(a) of the State Government Article, which provides:

"(a) *Review of final decision.* (1) Except as provided in subsection (b) of this section, a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section."

*Sugarloaf,* 344 Md. at 288, 686 A.2d at 614 (holding "that the statutory requirement that a party be 'aggrieved' mirrors

general common law standing principles applicable to judicial review of administrative decisions"), *citing Medical Waste Assocs. v. Maryland Waste Coalition, supra,* 327 Md. at 611 n. 9, 612 A.2d at 248–49 n. 9, *quoting Bryniarski,* 247 Md. at 144, 230 A.2d at 294.

Again, we are not persuaded. The appellees' argument is once again belied by the plain language of the statute governing entitlement to judicial review. Additionally, the Public Service Commission and its proceedings have been exempted from the requirements of the APA, including the provision governing judicial review. This exclusion is indicative of an intention on the part of the Legislature to continue the applicability of the unique provisions to which the Public Service Commission is subject, separate from those applicable to agencies to which the APA applies. *See* State Government Article § 10–203(3)(vi).[15] Had the Legislature intended that the standard for judicial review of Public Service Commission proceedings be the same as that prescribed for contested cases under the APA, it is inconceivable that it would have excluded the Public Service Commission from the APA, or at least not from the coverage of § 10–206.

Moreover, as the appellant points out, to interpret § 3–202(a) as the appellees do would render the word, "dissatisfied," which has been a part of the scheme since its inception, "meaningless, surplusage, superfluous, or nugatory." *GEICO,* 332 Md. at 132, 630 A.2d at 717. There is a difference, as our cases recognize, *see Carusillo v. Prince George's County,* 289 Md. 436, 441, 424 A.2d 1106, 1108 (1981) (treating separately

---

**15.** That section provides:

"(a) *General exclusions.*—This subtitle does not apply to:

 * * * * * *

"(3) the following agencies of the Executive Branch of the State government:

 * * * * * *

"(vi) the Public Service Commission. . . ."

The subtitle to which the exclusion applies is "Subtitle 2. Administrative Procedure Act—Contested Cases," § 10–206(a) of which covers judicial review.

the judicial review standard under the APA and that under Maryland Code (1957, 1980 Repl.Vol.) Art. 43, § 404);[16] *see also, Medical Waste v. Maryland Waste, supra,* 327 Md. at 611 note 9, 612 A.2d at 248 note 9, between the "dissatisfied" and "aggrieved" requirements. It long has been the law of Maryland and well settled, that statutes are to be read to give meaning to every word used and to do otherwise contravenes this cardinal rule of statutory construction. *GEICO,* 332 Md. at 132, 630 A.2d at 717. *See Chase, supra,* 360 Md. at 128, 756 A.2d at 991; *Blitz v. Beth Isaac Adas Israel Congregation,* 352 Md. 31, 40, 720 A.2d 912, 916 (1998).

For the foregoing reasons, this Court concludes that the appellant has standing to seek judicial review of the Commission order as to which it is dissatisfied.

HARRELL, Judge, dissenting, joined by RODOWSKY and RAKER, Judges:

I agree with the majority's decision to lift the stay on the order of the Public Service Commission ("Commission"); however I am unpersuaded by the Court's decision with regard to the Appellant trade association's standing to seek judicial review from the Commission's order of 10 November 1999. The majority holds that the plain language of the statute grants standing to seek judicial review to a trade association with no interest at stake different than the interest of its members. The majority's holding in this case offends settled principles of statutory construction and established case law. I would hold that the trade association lacks standing. Accordingly, I dissent and would affirm the judgment of the Circuit Court for Baltimore City dismissing the petition for judicial review.

---

**16.** Maryland Code (1957, 1980 Repl.Vol.), Art. 43, § 404 provided in pertinent part:

> "Any ... person, dissatisfied with any order or regulation of the [Secretary] under the provisions of this subtitle, may commence ... any action in the circuit court for any county ... to vacate and set aside any such order or regulation."

Section 3–202(a) of the Public Utility Companies Article ("PUC"), limits the right to seek judicial review to "a party or person in interest, including the People's Counsel, that is dissatisfied by a final decision or order of the Commission." The Mid–Atlantic Power Supply Association ("MAPSA") contends that it was both a party before the Commission and a person as defined by the statute,[1] and that, because it is clearly "dissatisfied" with the Commission's order, it is entitled to seek judicial review. The problem with this analysis is that it ignores the modifying phrase "in interest" contained in the statute.

In *Bosley v. Dorsey,* 191 Md. 229, 60 A.2d 691 (1948), this Court was asked to determine if the Commission's then newly created People's Counsel possessed the requisite standing to seek judicial review of an order of the Commission.[2] The statute, as written at the time, contained two separate provisions for judicial review from an order by the Commission. It provided, in pertinent part, as follows:

> Any company, corporation, association, person or partnership subject to any of the provisions of this sub-title, or person or party in interest, shall have the right to proceed to the courts to vacate, set aside or have modified an order of said Commission on the ground that such order is unreasonable or unlawful, as hereinafter more particularly set forth.

Maryland Code, 1939, Article 23, § 359. The statute further provided:

> Any corporation subject to this sub-title, or any of the provisions of this sub-title, and any person in interest being dissatisfied with any order of the commission, fixing any rate or rates, tolls, charges, schedules, joint rate or rates, or

---

**1.** Section 1–101(s) of the PUC defines a person as "an individual, receiver, trustee, guardian, personal representative, fiduciary, or representative of any kind and any partnership, firm, association, corporation or entity."

**2.** At the time of *Bosley,* the process of judicial review was referred to as an appeal.

any order fixing any regulations, practices, acts or service, may commence any action in the Circuit Court for any county, or before any judge of the supreme bench of Baltimore City, in any court of Baltimore City of appropriate jurisdiction which may be adopted for the purpose, against the commission as a defendant to vacate and set aside any such order on the ground that the rate or rates, tolls, charges, schedules, joint rate or rates, fixed in such order is unlawful, or that any such regulation, practice, act or service fixed in such order is unreasonable, in which action a copy of the complaint shall be served with the summons.

Maryland Code, 1939, Article 23, § 415. The question presented in *Bosley* was "whether the People's Counsel is a 'person in interest' within the contemplation of the statute." 191 Md. at 233, 60 A.2d at 693.

The Court interpreted the two statutory provisions as granting standing to seek judicial review to any "regulated public utility or . . . any individuals or corporations having an interest adversely affected by the order." *Bosley*, 191 Md. at 236, 60 A.2d at 694 (citing *Public Serv. Comm'n v. Byron*, 153 Md. 464, 471, 138 A. 404, 407 (1927)). Based on this language, the Court rejected the argument that the Legislature intended that the People's Counsel could seek judicial review as an agent for the public.

Shortly after *Bosley*, the General Assembly amended the PUC specifically to allow the People's Counsel to seek judicial review. In 1955 the General Assembly decided to recodify the PUC. In the REPORT OF THE COMMISSION TO REVISE AND RECODIFY THE LAWS CONCERNING THE PUBLIC SERVICE COMMISSION (1955) ("REPORT"), the legislative study commission noted that "[a]s a result, in part, of this basic defect of lack of an integrated statutory plan, the law is also swollen with much needless repetition." REPORT at 3. Thus, a basic goal of the proposed recodification was to eliminate such repetition and reorganize the statute into a coherent form. *See* REPORT at 4. The Commission also stated, in the introduction to the Report, that any "changes in phraseology of the present law are not intended to effect any

change in meaning unless such intention is specifically stated in the explanatory notes, or the clear language of the draft leads inescapably to the conclusion that some change in meaning must have been intended." REPORT at 5. The 1955 revision of the PUC was a product of the Commission's recommendations.

The judicial review provisions of the former statute, as recommended by the Commission, were recodified into one section. The recodified statute provided, in pertinent part, as follows:

> Any party or any person in interest, including the People's Counsel, dissatisfied by a final decision or order of the commission, whether affirmative or negative in form, is entitled to judicial review thereof as provided in this subtitle.

Maryland Code, 1955, Article 78, § 83.[3] In *Bureau of Mines v. George's Creek*, 272 Md. 143, 155, 321 A.2d 748, 754–55 (1974), we identified the significance of changes made to a statute in a recodification:

> [A] change in phraseology of a statute in a codification will not as a general rule modify the law, unless the change is so radical or material that the intention of the Legislature to modify the law appears unmistakable from the language of the Code.

The comment to former § 83 of Article 78 of the revised code specifically stated that the section was intended to integrate the existing provisions for judicial review into one easily understandable section. *See* REPORT at 69; *see also Allers v. Tittsworth*, 269 Md. 677, 683, 309 A.2d 476, 480 (1973) (explaining that it is a well-settled practice of this Court to refer to the Revisor's Notes when searching for the legislative intent). Thus, other than to alter the result in *Bosley* by expressly declaring the People's Counsel to be a 'party in interest,' the changes made to the statute during the 1955

---

3. The language used in this statute is nearly identical to the statute as it appears today.

recodification were not intended to enlarge the class of persons in interest beyond the scope of the class as interpreted in *Bosley, i.e.,* any 'regulated public utility or . . . any individuals or corporations having an interest adversely affected by the order.' *Bosley,* 191 Md. at 236, 60 A.2d at 694. Depending upon the context, the words "include" or "including" when used in a statute may have the meaning of "and" or "in addition to." *See Housing Authority of Baltimore City v. Bennett,* 359 Md. 356, 372, 754 A.2d 367, 375 (2000). In other words, the only entity that enjoys statutory standing as a representative of persons in interest is the Office of People's Counsel.

The majority's basic assertion is that the plain meaning of the statute allows MAPSA standing to obtain judicial review in this case. Majority opinion at 204–05. The majority asserts that the term "dissatisfied" means something less than "an interest adversely affected" and thus the term "in interest," as interpreted by the *Bosley* Court, would render "dissatisfied" meaningless. Majority opinion at 207–13, 214–15. Because one of the principal guidelines of statutory interpretation is that "[i]f reasonably possible, a statute is to be read so no word phrase, clause or sentence is rendered surplusage or meaningless," *Mazor v. Dep't of Correction,* 279 Md. 355, 360–61, 369 A.2d 82, 86–87 (1977), the majority reasons that the statute should be read to confer standing based on less than an interest adversely affected.[4] Although this interpretation

---

**4.** Although not called upon to decide the issue presented by the present case, our predecessors seem to have assumed (albeit in dicta) that the standing to seek judicial review conferred by the various iterations of the pertinent statute included a requirement that one's interest be adversely affected and that one be aggrieved. *See Bosley v. Dorsey,* 191 Md. 229, 235–36, 60 A.2d 691, 694 (1948) (stating that the rights of any parties aggrieved by any action of the Commission were completely secured by the provision that " 'any person in interest being dissatisfied with any order' may commence a suit against the Commission" and that "[a]ppeals from an order of the Commission may be taken either by a regulated public utility or by any individuals or corporations having an interest adversely affected by the order" (citing *Public Serv. Comm'n v. Byron,* 153 Md. 464, 471, 138 A. 404, 407 (1927); *Gregg v. Laird,* 121 Md. 1, 32, 87 A. 1111, 1114 (1913))); *Byron,* 153 Md. at 471,

of the statute is facially appealing, it fails to persuade me of its correctness for three reasons: (1) the majority's construction would also create surplusage; (2) the interpretation of the *Bosley* Court is more consistent with the plain language of the statute; and (3) the Legislature relied on the interpretation given to the language in *Bosley* when it recodified the statute.

First, under the majority's construction of the language, the phrase "in interest" would become surplusage. If one assumes the term "dissatisfied" is the key term in determining what is required for judicial review, then "in interest" adds nothing to the statute. Under this construction, all that would be required to seek judicial review is that a party or a person is dissatisfied with an order or decision of the Commission. This construction cannot be correct. If it were, literally anyone would be empowered to seek judicial review of a Public Service Commission order. Hypothetically, a citizen of a service area not covered by the pertinent PSC order in the present case could challenge that order because he or she is dissatisfied with the fact that citizens in the erstwhile BGE service area will be paying less for electricity. Such an absurd consequence could not have been the intention of the Legislature. *See Mazor,* 279 Md. at 361, 369 A.2d at 87 ("[W]herever possible an interpretation should be given to statutory language which will not lead to absurd consequences."). I am not persuaded the Legislature intended to set the standing bar so low. If we must choose between two interpretations of a statute, each of which would create surplusage, we should choose the interpretation which the Legis-

---

138 A. at 407 ("If any corporate or private interest is adversely affected, it may attempt to enforce its position under the section cited ...." (referring to then § 404 of Art. 23, which provided "any corporation subject to this sub-title ... and any person in interest being dissatisfied with any order of the commission ... may commence any action ... against the commission....")); *Gregg,* 121 Md. at 32, 87 A. at 1114 ("[T]he rights of parties who may feel aggrieved by the action of the Commission are fully guarded and protected by the provision of section 43 of the Act 'that ... any person in interest being dissatisfied with any order of the Commission may commence any action ... against the Commission ....' " (emphasis omitted)).

lature previously has accepted and which does not create an absurd result.

Second, the majority's interpretation of the statute fails because the definition of "in interest" articulated by the *Bosley* Court is more consistent with the plain language of the statute. The phrase "party in interest" is often referred to as a "real party in interest." The definition of "real party in interest" has been the issue of much debate. In more recent years, the trend has been to define a real party in interest as:

A person entitled under the substantive law to enforce the right sued upon and who generally, but not necessarily, benefits from the actions final outcome.

BLACKS LAW DICTIONARY 1143 (7th ed.1999); *see also South Down Liquors, Inc. v. Hayes,* 323 Md. 4, 7–8, 590 A.2d 161, 162–63 (1991). This, however, could not be the definition the General Assembly intended when it enacted the statute at issue here. This section of the statute is supposed to establish who may enforce rights.[5] Thus, an interpretation which incorporates the modern definition of "party of interest" would render the statute meaningless. The General Assembly must have intended "party or person in interest" to mean something other than the modern definition.

At the time the statute was originally written and recodified, a "real party in interest" was generally defined as follows:

In statutes requiring suits to be brought in the name of the "real party in interest," this term means the person who is actually and substantially interested in the subject-matter, as distinguished from one who has only a nominal, formal, or technical interest in it or connection with it.

BLACKS LAW DICTIONARY 1278 (4th ed.1951). This definition would seem to fit more appropriately into the general

---

5. "The question of standing ... concerns ... whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute ... in question." *Ass'n of Data Processing Serv. Orgs. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184, 188 (1970).

legislative intent of the statute. If a party or person in interest has a substantial stake in the proceedings, it is reasonable to assume that in nearly every instance when that party or person would be dissatisfied with an order, the order also would adversely affect its interests. Thus, the plain meaning of the statute comports more closely with interpretation provided by the *Bosley* court than with the interpretation the majority asserts today.

Third, even if the interpretation of the statute in *Bosley* was not what the earlier Legislature intended, the Legislature since has relied on that interpretation in recodifying the statute. "The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation." *Nationwide Mutual Insurance Co. v. USF & G*, 314 Md. 131, 143, 550 A.2d 69, 75 (1988)(internal quotation marks omitted)(quoting *Harden v. Mass Transit Admin.*, 277 Md. 399, 406, 354 A.2d 817, 824 (1976)). If the Legislature had intended a trade association to be able to seek judicial review, it could have removed the phrase "in interest" or specifically provided for such an eventuality.

The General Assembly did make one substantive change to our interpretation in *Bosley* by specifically allowing the People's Counsel to seek judicial review. Nevertheless, neither this change, nor any of the changes made subsequently, have removed the term "in interest" from the statute. Thus, the interpretation given to that phrase in *Bosley* has been accepted by the Legislature, and we can conclude that it is the interpretation that the General Assembly intended at recodification. A reviewing court cannot simply look at the plain language of the statute in a vacuum and ignore comments to a statute and decision interpreting very similar language. The legislative history and the interpretation given to the nearly identical language in *Bosley* allows us to ascertain the real intention of the Legislature. *See Mazor*, 279 Md. at 360, 369 A.2d at 86 ("The cardinal rule of construction of a statute is to ascertain and carry out the real intention of the legislature.").

The decision in *Bosley v. Dorsey* is controlling in the instant case. Therefore, a party, other than the People's Counsel, in order to seek judicial review from an order of the Commission, still must have an interest adversely affected by the order. MAPSA does not generate or distribute electricity in Maryland, nor does it propose to do so after deregulation. Only its constituent members may be affected adversely by the Commission order. MAPSA is a trade association with no legally cognizable direct or substantial interest in the implementation of the order. It does not have an interest adversely affected by the order that we should recognize. Consequently, MAPSA has no standing to seek judicial review in the present case. Its petition for judicial review was dismissed properly by the Circuit Court.

Judges RODOWSKY and RAKER authorize me to state that they join in this dissent.